THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM T. COWHERD, Defendant-Appellant.

Second District   No. 78-335

Opinion filed January 14, 1980.

Mary Robinson and John Lanahan, both of State Appellate Defender's Office, of Elgin, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was convicted of armed robbery and sentenced to a term of imprisonment of not less than 20 nor more than 60 years. In this appeal he raises four issues: (1) that the State failed to prove him guilty beyond a reasonable doubt where the only eye-witness to the robbery identified the court bailiff as the robber and the principal witness against the defendant was his co-defendant, who pleaded guilty and received a much lesser sentence; (2) the defendant was denied a fair trial when the State failed to disclose, until the second day of trial, that the State had in its possession and intended to use an alleged oral statement made to the State's only police witness; (3) the defendant was denied a fair trial when a statement made by him during the course of a plea discussion was admitted against him at trial and (4) the defendant's sentence was excessive, considering that his co-defendant, who admitted planning the

robbery and who pleaded guilty, received a sentence of only 7 to 15 years, whereas the defendant was sentenced to not less than 20 nor more than 60 years.

The robbery of a jewelry store in Zion, Illinois, occurred at 9:30 in the morning of March 22, 1977. Jo Don Tvo testified as a State's witness that he planned the robbery and that the defendant and two other men actually carried it out, while Tvo and Tvo's wife waited outside in two getaway cars.

The store owner and a clerk testified that they opened up at 9:30 a.m. and a man entered and engaged the clerk in conversation. Two other men entered. Guns were pulled out and the owner and clerk threatened and tied up. The three men took approximately $70,000 worth of jewelry and loose diamonds and cash in the amount of $1349, placed the loot in a shopping bag and departed.

Tvo testified the three men returned after five to 10 minutes. Two men entered the car driven by Tvo's wife, and the defendant entered Tvo's car carrying a shopping bag filled with jewelry. The two cars were driven to Chicago where the group checked into a hotel. Tvo later sold the loot to fences and sent defendant his share of $2000.

I

The defendant contends he was not proven guilty beyond a reasonable doubt. During the trial of William Cowherd, the prosecutor asked Thomas Fortner, the clerk in the store, to identify one of the men involved in that robbery. The witness identified one of the court bailiffs as the robber, not the defendant.

■■ The remaining evidence which implicated defendant came from two sources: Jo Don Tvo and Detective Vernon Summerford. Defendant asserts that Tvo's testimony is not credible and that Summerford's testimony was "manufactured" to bolster a weak case. The failure of the victim, Thomas Fortner, to identify the defendant in open court is not fatal to the State's case if the defendant was proved guilty beyond a reasonable doubt by other evidence.

The testimony of the owner and Thomas Fortner established without a doubt that the jewelry store had been robbed by three men. Jo Don Tvo, an accomplice witness, named defendant as a participant in the crime. Tvo testified he went to Zion three days before the robbery and cased the jewelry store. He returned to his motel and called the defendant, who then came to Waukegan and stayed with him. Tvo laid out the interior of the store to the defendant and Harris, another of the participants, and told them the location of a valuable bracelet. Tvo, his wife, defendant and Harris went to Zion to look in through the front window of the jewelry store. On the morning of the 22nd, they checked

out of their motel] and drove to the jewelry store. The defendant, Harris, and another person were in one car and Tvo and his wife in another. They parked in an area behind the store. The defendant, Harris and the third man got out of their car and Mrs. Tvo entered it as a driver, Tvo remaining in his car for the getaway. The men went around the block. They returned in five or 10 minutes. Two men entered the car now driven by Mrs. Tvo, and the defendant entered the car Tvo was driving. Defendant had a shopping bag filled with jewelry. They drove to Chicago.

The testimony before the jury of Jo Don Tvo as to the facts of the occurrence were prefaced by a lengthy recital of his criminal record. He testified that prior to 1967 he had pleaded guilty to three armed robberies. In 1977, he had pleaded guilty to Federal charges of counterfeiting and racketeering and received a 15-year sentence which he was currently serving in a Federal institution. In 1977, he also pleaded guilty to armed robberies in Decatur, Peoria and Champaign and received sentences to run concurrently with the maximum of 15 years. He pleaded guilty to the armed robbery of the Zion jewelry store in return for his testimony in the case at hand and was sentenced to a term of 7 to 15 years running concurrently with the other sentences.

■■ The defense attack on Tvo's testimony really goes to promises of leniency and not to credibility. It has always been the rule in Illinois that the uncorroborated testimony of an alleged accomplice is sufficient to warrant conviction. (*People v. Hermens* (1955), 5 Ill. 2d 277.) The fact that the accomplice is a self-confessed criminal and has expectation of leniency does not, of itself, raise a reasonable doubt. *People v. Musgray* (1976), 37 Ill. App. 3d 48.

Corroboration of Tvo's testimony was provided by the store owner and Thomas Fortner, both of whom were present in the jewelry store at the time of the robbery. In *People v. Wilson* (1977), 66 Ill. 2d 346, 349, the supreme court pointed out:

> "* * * [W]hether accomplice testimony, corroborated or uncorroborated, is a satisfactory basis for conviction goes to the weight of the evidence and is, therefore, in the province of the jury or the court."

In *People v. Farnsley* (1973), 53 Ill. 2d 537, 544-45, the court stated:

> "* * * [S]uch testimony, even where subject to infirmities such as promises of leniency, may be sufficient. The test remains that the trier of fact must be satisfied beyond a reasonable doubt that the accomplices' testimony is true, and, once established, the decision will not be reversed unless that quantum of proof is lacking."

After examination of the record, we find that the evidence presented clearly sustained the verdict.

## II

The defendant next contends that the trial court erred in refusing to bar Detective Summerford's testimony with regard to defendant's admissions.

On the second day of the trial, defense counsel learned that the State intended to present the testimony of Detective Summerford, the arresting police detective, to establish that an inculpatory oral statement had been made by the defendant shortly after his arrest. The statement had never been reduced to writing in the police records nor was it referred to in the initial report of Detective Summerford nor disclosed by the State at the preliminary hearing. Moreover, the existence of such a statement was not acknowledged to the defense in the State's answer to the defendant's discovery motion. When defense counsel learned of the State's intended use of the oral statement, he objected to its use as being a violation of section 114—10(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, ch. 38, par. 114—10(c)), which provides as follows:

> "No such confession shall be received in evidence which has not been furnished in compliance with subsection (a) of this Section unless the court is satisfied that the prosecutor was unaware of the existence of such confession prior to trial and that he could not have become aware of such in the exercise of due diligence."

Defense counsel made a motion *in limine* to suppress the alleged statement made by the defendant to Detective Summerford as being a violation of the above section of the Code of Criminal Procedure and also as contravening Supreme Court Rule 412(a)(ii) (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)(ii)), which reads:

> "(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession and control:
>
> * * *
>
> (ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements."

The trial court ruled that since the statement had not been reduced to writing the actual statement did not have to be disclosed on discovery but only that such a statement existed. Even the fact of its existence had not been disclosed, however, and in view of the obvious fact that the defense had been taken by surprise, the court offered to recess for 15 minutes to give defense counsel an opportunity to question Detective Summerford as to the substance and background of the alleged statement, whereupon

defense counsel could renew his motion to the court. Defense counsel replied that he had already learned that morning what the substance of Summerford's testimony would be and he thought there was no advantage of going over it again. Thereupon the court held a hearing on the motion to suppress the statement. At the conclusion of the hearing the trial court stated he thought the statement, if made, was made voluntarily and the remaining question for the jury was whether the statement had actually been made. He then denied the motion to suppress.

Detective Summerford's testimony did not establish a confession to him by the defendant that he participated in the actual holdup but was to the effect that he had been at the scene of the robbery, that he had carried a bag and that he had gone back to the Essex Hotel in Chicago with Tvo after the robbery.

■■ We are not impressed by the State's argument that the statement in question did not amount to a "confession" but was only an oral admission, hence not within the intent of the Code of Criminal Procedure. It is true, of course, that the statute speaks of the duty to furnish the defendant with a copy of "any written confession" and if the defendant has made an oral confession only, "a list of the witnesses to its making" shall be furnished. (Ill. Rev. Stat. 1977, ch. 38, par. 114—10(a).) The State did not, of course, supply any information whatsoever to the defendant in advance regarding the oral confession so that its position in that regard is not sound, unless the statement did not amount to a "confession." In *People v. Rand* (1975), 29 Ill. App. 3d 873, the same contention was considered by this court and there rejected on the ground that the statement in question was an admission of the ultimate fact of breaking and entering and participation in the proceeds, which indicated he was guilty of the crime of burglary and therefore amounted to a confession. In the case before us, the statement attributed to the defendant by Detective Summerford would establish that he entered the store with others and came out carrying a bag which contained jewelry. These facts would seem to make the defendant guilty of armed robbery under an accountability theory, since it was established that guns were used and the victims were tied up and intimidated and considerable jewelry was taken from the store. Moreover, it is obvious that the State failed to comply with Supreme Court Rule 412(a)(ii) cited above.

■■ While we strongly disapprove the State's tactics in evading the obligation to disclose the evidence in question, it appears, as a practical matter, that it was the *nature* of the evidence itself rather than the surprise suffered by the defense which damaged the defendant's case. The delay and evasion of the State in performing its obligation to disclose, while it may throw some doubt—as strongly suggested by defense counsel—on the actual prior existence of such a statement, did little to add to its

damaging impact. The trial court found the statement, if made at all, was voluntary and it was within the province of the jury to determine the credibility of Summerford and to determine whether or not the conversation in question ever took place. The defendant, of course, denied that he ever made the admissions in question. Nevertheless, there was little that the defense could have done, if advised of such a statement earlier, than was actually done at trial by way of cross-examination. Defense counsel learned of the substance of the proposed testimony prior to the start of the second day of trial and declined a continuance to further discuss it with Detective Summerford before continuing with the trial. While, therefore, the defense was surprised by the fact of such admissions on defendant's part, the nature of them seems to have been such that further time to investigate would have been of little advantage. It was the nature of the testimony rather than the timing which disadvantaged the defense. The timing did, indeed, throw some doubt on its credibility, but it was the function of the jury to determine the weight to be given it once the statement was admitted. Since both the section of the Code of Criminal Procedure and the Supreme Court Rule were designed to prevent prejudice due to surprise and since an offer of continuance was made by the trial court to alleviate the impact of surprise, we are of the opinion the nondisclosure of the alleged oral admissions in pretrial discovery was not so critical in its effect as to require exclusion under the particular circumstances of this case.

### III

■■ ■ The defendant also contends prejudicial error was committed when Detective Summerford testified, because of the reference in his testimony to certain plea negotiations which the defense says amount to a violation of Supreme Court Rule 402(f), which provides as follows:

> "If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." Ill. Rev. Stat. 1977, ch. 110A, par. 402(f).

The contention that Supreme Court Rule 402(f) was violated was based on the testimony of Detective Summerford as follows:

> "I talked to Mr. Cowherd about the armed robbery of Ashland Jewelers and he was interested at that time in some negotiations and I believe that the State's Attorney had offered, I'm not sure, I believe five- to 12-year sentence for a plea to run concurrent with time that he had already gotten in Macon County, and we talked about this and we talked about the armed robbery of Ashland's

and he had stated that he, he had carried a bag, that he had been there, that he had carried a bag and that he had been back to the Essex Hotel with Mr. Tvo, and he also stated that he would like to talk to Mr. Fred Davis from the FBI office in Springfield and to cooperate with them and he wanted to do his time in a federal prison.

I told him I couldn't promise him anything with reference to the federal people. I made a phone call for him and allowed him to talk to Mr. Davis with reference to negotiations with him."

Objection was made and sustained to the narrative form of this testimony but no objection was made by defense counsel to this testimony itself or any portion of it, based on a disclosure of plea negotiations. We do not conceive the conversation related by Detective Summerford as coming within the spirit and intent of Supreme Court Rule 402(f). We think something more formal and definite is intended by that rule than a passing reference in a conversation between a police officer and defendant to constitute a plea negotiation or plea discussion within the meaning of the rule. The rule contemplates, we believe, the actual plea discussions between the accused and the competent State authorities charged with the negotiations of guilty pleas and sentences. This was not such a situation in our judgment, nor does defense counsel seem to have so considered it at the time of the testimony. While we recognize the salutary purpose of Rule 402(f) in protecting the defendant from adverse inferences based on an actual plea discussion with responsible authorities, we do not think the factual situation here requires that rule to be invoked. Defendant cites *People v. Steptore* (1972), 51 Ill. 2d 208, which appears to be the most recent case on this point. That case involved a direct negotiation between the accused's guardian and the State's Attorney in which the State's Attorney queried a detective who was present with the accused's guardian at the time as to what terms had been offered to the accused and he elicited a reply as to an offer to plead guilty in return for a certain sentence. We think that those circumstances went far beyond the case at hand.

## IV

■ The defendant's last contention is that his sentence is excessive in view of the sentence of 7 to 15 years received by Jo Don Tvo who selected the site and planned the robbery and whose past history showed a long involvement with the law. Since Tvo pleaded guilty, however, on a negotiated plea, his previous record was not a consideration. Judging the defendant's record on its own merits, without reference to his accomplice, we note that this is his third armed robbery conviction within a few years. The victims in this case were menaced by drawn revolvers and threatened with death. While we acknowledge the disparity of the

sentences, we cannot say the sentence meted out to the defendant was excessive for a third armed robbery committed within a short period of time.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.