THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT EARL VICTORY, Defendant-Appellant.

Second District No. 80-136

Opinion filed March 27, 1981.

Mary Robinson and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE REINHARD delivered the opinion of the court:

The defendant, Robert Earl Victory, was found guilty in the circuit court of Du Page County by the trial judge sitting without a jury of two counts of armed violence and two counts of armed robbery all arising out of the same transaction occurring on March 2, 1979. Subsequently, the trial court vacated the judgments for armed violence.and one armed robbery, and sentenced the defendant to a term of six years in the

Department of Corrections on the remaining armed robbery count. The only issue raised by the defendant on appeal is that his volunteered statement to the arresting officers was a plea-related statement inadmissible in evidence under Supreme Court Rule 402(f) (Ill. Rev. Stat. 1979, ch. 110A, par. 402(f)) and was improperly considered by the trial judge in adjudicating his guilt.

As this appeal is limited to one issue centering upon a conversation after defendant's arrest, the facts relevant to the substance of the crime for which he was arrested will only be briefly set forth.

Defendant and the victim, Raymond Stanley, who were previously unacquainted, met on March 2, 1979, at approximately 4 a.m. in a restaurant in Chicago. Both agreed to go to Cicero for a drink since that area had bars open after 4 a.m. Being unable to find any open bars, Stanley invited defendant for a drink over at his place which was an apartment connected to his antique shop in Clarendon Hills. After arriving there, Stanley testified he showed defendant the store, poured him a glass of wine, and undressed and proceeded to wash and shave in order to get ready for work, which was back in Chicago. While he was in the bathroom, Stanley stated the defendant entered, came at him with a bottle of wine and a knife and informed him that this was a robbery. Defendant then proceeded to tie Stanley up and took his coat, money and some items from the antique shop including rings, a hair dryer, a portable TV and a clock radio. Defendant then proceeded to take Stanley's car. After defendant left the premises, Stanley stated that he untied himself, procured a wooden chair leg for a weapon, and ran outside in his underwear and summoned a police officer who was nearby in his squad car.

Defendant testified that after he was invited into Stanley's residence he was given some wine. He then stated that Stanley undressed "and practically begged him to come to bed with him." Defendant said that he resisted such requests and that he wanted to be returned home. He further stated that Stanley came after him with a wooden chair leg and tried to hit him. Defendant then averred that he tied Stanley up because he was afraid of "the John Gacy thing," referring to the convicted mass murderer. Defendant then testified that he took Stanley's car, but that Stanley told him to wreck it so he could recover the insurance from it. He also admitted taking other items from the store.

After defendant ran outside to Stanley's car, he was pursued by the police and apprehended less than a mile from Stanley's residence along with a knife and items taken from Stanley. Defendant was transported to the Clarendon Hills police station where he was read his *Miranda* rights and signed a waiver form. He was then questioned by Officers Geiseman and Johnson and gave an exculpatory statement essentially similar to his

trial testimony, though differing in some respects. At approximately 1:30 p.m., Officers Geiseman and DeVries transported defendant to the Du Page County jail. En route to the jail, defendant made the following unsolicited statement to the officers which forms the basis of this appeal. Officer Geiseman testified at trial as follows:

"Q. Did you ask the Defendant any questions, on the way to the County Jail?

A. No, sir.

Q. Did the Defendant make any statements on the way to the County Jail?

A. Yes, sir.

Q. Would you relate to us, please what those statements were.

A. The Defendant advised us, myself and Seargeant [sic] DeVries, that he realized that this is a Class X felony, and under Class X he could get a maximum of 30 years. That he would—that he can't afford to take an armed robbery charge, and that he would accept 10 years, and would the State's Attorney be willing to plea bargain.

Q. What was your response to that statement?

A. My response to that statement was, I don't know. You have to check with the State's Attorney."

Officer DeVries' relevant testimony is:

"A. Yes, he—something to the effect that this is a Class X felony, and he was wondering what type of an arrangement could be made with the State's Attorney's Office.

Q. Did you make any reply to that, sir?

A. No, I did not."

Defendant failed to object to this testimony, and he did not include it in a specific motion for a new trial. At the time the trial judge found the defendant guilty, and later at the sentencing hearing, the court specifically referred to this statement made by the defendant.

■■ Initially, we must determine if the defendant's failure to object to this testimony and failure to include this as error in his post-trial motion waives this issue on appeal. Ordinarily, it will do so. (*People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254; *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.) However, we shall consider this issue on its merits since our supreme court in *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229, held that testimony regarding a plea negotiation would be so prejudicial to require reversal despite overwhelming evidence of the defendant's guilt and despite failure to object.

■■ Next, inasmuch as this was a bench trial, normally improper evidence not objected to is assumed to have been disregarded by the trial judge. (*People v. Harris* (1974), 57 Ill. 2d 228, 314 N.E.2d 465.) However, on our

reading of the record we believe from the comments of the trial judge that this evidence was considered by her in weighing the credibility of the witnesses. Accordingly, we address ourselves to the specific issue of whether the defendant's voluntary, unsolicited statement to the arresting officers was plea-related and therefore inadmissible under Supreme Court Rule 402(f).

Rule 402(f) provides:

"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." (58 Ill. 2d R. 402(f).)

As further enunciated in *Friedman*:

"Implicit in the promulgation of this rule was our recognition of the significance of the negotiation process to the administration of justice (see *Santobello v. New York* (1971), 409 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495) and our appreciation of the devastating effect of the introduction of plea-related statements in the trial of the accused (see *Kercheval v. United States* (1927), 274 U.S. 220, 71 L. Ed. 1009, 47 S. Ct. 582). The purpose of our rule is to encourage the negotiated disposition of criminal cases through elimination of the risk that the accused enter plea discussion at his peril. (*People v. Hill* (1980), 78 Ill. 2d 465; *People v. Steptore* (1972), 51 Ill. 2d 208.)" (79 Ill. 2d 341, 351, 403 N.E.2d 229.)

On the other hand, not all statements made in hopes of some concession are necessarily plea discussions. (See *United States v. Posey* (5th Cir. 1980), 611 F.2d 1389; *United States v. Robertson* (5th Cir. 1978), 582 F.2d 1356.) The characterization of a statement as plea-related, and therefore inadmissible under Rule 402(f), will turn on the facts of each case. (*Friedman*, at 352.) In view of the similarity between Supreme Court Rule 402(f) and provisions of Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure, a two-tiered inquiry was adopted in Illinois patterned after a Federal court's analysis of the question in *United States v. Robertson*. This test of whether a particular statement is plea related is:

"[F]irst, whether the accused exhibited a subjective expectation to negotiate a plea, and, second, whether this expectation was reasonable under the totality of the objective circumstances * * *." *People v. Friedman* (1980), 79 Ill. 2d 341, 351, 403 N.E.2d 229.

Defendant relies principally on two recent Illinois Supreme Court cases that considered this question. Both cases, *People v. Hill* (1980), 78 Ill. 2d 465, 401 N.E.2d 517, and *People v. Friedman* (1980), 79 Ill. 2d 341,

403 N.E.2d 229, held that, in the context in which certain statements were made by the defendants therein, they were plea-related and inadmissible. In *Hill*, the statements were made to an Assistant State's Attorney, while in *Friedman* the statement was made to an investigator for the Illinois Attorney General's Office. Similarly, the defendant argues that even though the statement here was not made to individuals with actual authority to enter negotiations, as was the case in *Hill* and *Friedman*, it was reasonable for the defendant, Victory, to assume that the officers were appropriate individuals to convey his offer to the State's Attorney.

The State contends that at the time the defendant made the unsolicited statement he did not exhibit a subjective expectation to negotiate a plea since he knew by his own statement that the State's Attorney had the authority to plea bargain. And the State further argues that the statement was not made to the officer to facilitate negotiations. As to the second prong of the test, whether the expectation was reasonable under the totality of the objective circumstances, the State takes the position that because of what the defendant said and because the officers themselves gave no indication they were authorized to discuss a deal and had no previous contact with the defendant, it was objectively unreasonable to conclude that these officers could negotiate or convey any offer to negotiate. Additionally, the State relies on two pre-*Friedman* cases, *People v. Carter* (1967), 38 Ill. 2d 496, 232 N.E.2d 692, and *People v. Cowherd* (1980), 80 Ill. App. 3d 346, 399 N.E.2d 672, which hold admissible similar statements to police officers. As to this last argument, we shall not address those cases other than to observe that the decision of this court in *Cowherd* was prior to *Friedman* and without the benefit of the reasoning therein, and *Carter* was decided prior to the adoption of Rule 402 as distinguished by our supreme court in *People v. Hill*.

■■ ■ As we noted above, our analysis and application of the test to determine whether a statement is plea-related is determined by the particular facts of each case. Therefore, we address the first part of the test, whether the accused exhibited a subjective expectation to negotiate a plea. The testimony at trial was that defendant's statement at issue was made to arresting officers within hours after the crime en route to the jail and subsequent to his having made a substantially exculpatory statement to those officers and having been apprehended by them in possession of the victim's property after a chase. His statement, in part, "would the State's Attorney be willing to plea bargain," indicates to us that he knew the State's Attorney was the one who had authority to negotiate. He did not ask the officers to make contact with the State's Attorney for him, to convey to the State's Attorney any offer to plea bargain nor did he testify at trial what his expectations were. We characterize the defendant's comment to these officers, in this context, as a question expressing his

concern about the length of time of possible incarceration designed to elicit their opinion on that rather than to initiate plea negotiations. In this sense, the defendant was not asking these officers to plea bargain or convey any plea offer to the State's Attorney, but was determining if the State's Attorney did plea bargain to soothe his anxiety over the possible sentence he might serve. Coupled with his statement that he could "get a maximum of 30 years" and "he would accept 10 years," his failure to pursue plea discussions with the officers and the absence of a request to convey anything to the State's Attorney, lends support that this is an admission showing guilty knowledge rather than a subjective expectation or attempt to enter plea discussions. Unlike the facts in *People v. Hill,* wherein the defendant asked an Assistant State's Attorney to see "the honcho, the head man" and said "I want to talk deal," this defendant never expressly attempted to plea bargain with them or anyone else. While the facts in *People v. Friedman* are similar in that the statement made is to a law enforcement officer, this is the only similarity since the statement there was made months after defendant's indictment to an investigator of the prosecuting authority and was a specific offer made directly to that investigator with whom the defendant had prior conversations about the investigation. The recent cases leave no doubt that plea discussions protected by Rule 402(f) may take place between a defendant and one who lacks authority to engage in plea discussions. (*People v. Friedman; People v. Hill; People v. Hardiman* (1980), 85 Ill. App. 3d 347, 406 N.E.2d 842; *People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38.) The difference here is that from the defendant's own statement he knew the officers had no authority in that respect and still did not ask them to put him in contact with the State's Attorney who did. Defendant's comments appear to us to be more in the nature of his own speculation about a possible sentence and curiosity as to whether the State's Attorney plea bargains, rather than a subjective expectation to initiate plea discussions

Even were we to conclude that the defendant exhibited a subjective expectation to negotiate a plea, it is our opinion that this expectation was unreasonable under the totality of the objective circumstances in this case. Certainly nothing the officers said or did can be interpreted as initiating plea discussions or misleading the defendant to believe they had any authority to enter into plea discussions. More importantly, by defendant's own statement, he knew the State's Attorney was the one who had that discretion, yet he never asked the officers to communicate with the State's Attorney in his behalf. Under these circumstances, we cannot find that the defendant had a reasonable expectation that he was either negotiating a bargain or initiating plea discussions to be conveyed to the State's Attorney. (See *United States v. Posey* (5th Cir. 1980), 611 F. 2d 1389).

Rather, we classify defendant's statement as an admission of guilt which, though stated in the context of his ultimate sentence were there a negotiated plea, was not a request to plea bargain which transforms an admission into a plea negotiation. (See *United States v. Robertson* (5th Cir. 1978), 582 F. 2d 1356, 1368.) In making this determination, we do so under the peculiar facts of this case mindful of the salutary purpose of Rule 402(f) in protecting the defendant from adverse inferences based upon statements made in circumstances in which the accused is seeking to negotiate a plea agreement.

Accordingly, for the reasons stated, the judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.