NO. 4-96-0434

IN THE APPELLATE COURT 

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from

Plaintiff-Appellant, )  Circuit Court of

v. )  Vermilion County

JAMES J. TAYLOR, )  No. 94CF389

Defendant-Appellee. )

)  Honorable

)  John P. O'Rourke,

)  Judge Presiding. 

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

In September 1994, defendant, James J. Taylor, was charged by two-count information with criminal sexual assault and aggravated criminal sexual assault.  720 ILCS 5/12-13(a)(2), 12-14(c) (West 1994).  In May 1996, the trial court granted defen­dant's mo­tion 
in
 
limi­ne
, bar­ring the State from in­tro­duc­ing at trial state­ments he made dur­ing ques­tioning by Danville po­lice in­ves­ti­ga­tors re­gard­ing an alleged sexual as­sault.  The State ap­peals.  145 Ill. 2d R. 604(a)(1).  De­fen­dant main­tains the trial court ruled properly because the state­ments at issue were part of an un­successful plea dis­cus­sion with po­lice and inad­mis­sible under Su­preme Court Rule 402(f).  134 Ill. 2d R. 402(f).  We disagree and reverse.

In the afternoon of August 30, 1994, Danville police in­ves­ti­ga­tors Gene Woodard and Keith Garrett brought defendant to the Vermilion County public safety building for an interview regarding a sexual as­sault com­plaint filed in which the victim

named him as her as­sail­ant.  The investigators also had defen­dant open the church where the crime allegedly occurred so they could execute a search warrant of the premises.  The in­ves­ti­ga­tors ques­tioned de­fen­dant at the pub­lic safe­ty building for ap­prox­i­mate­ly 1 hour and 45 min­utes.  

At the start of the in­ter­view, Woodard advised defen­dant of his 
Miranda
 rights and defendant signed and ini­tialed a form acknowledging he un­derstood those rights.  De­fen­dant had been an aux­il­iary Danville po­lice officer for some years and the in­vesti­gators knew him per­sonally prior to the interview.  Defen­dant denied committing the act under investigation.  In the lat­ter half of the in­ter­view, de­fen­dant told the investi­ga­tors about a prior occa­sion when he com­mitted a traf­fic offense in Bloomington, went to court and plead­ed no contest and received only a fine.  He then asked the in­ves­ti­ga­tors what would hap­pen to him if he pleaded "no con­test" to the pend­ing com­plaint.  The in­ves­tiga­tors told defen­dant "[w]e ha[ve] no control over that.  We don't do that" and made no promises of leniency to de­fen­dant.  Defendant nei­ther offered to plead guilty nor asked for any spe­cific conces­sions.  After the interview, de­fen­dant was al­lowed to leave the building.  Shortly thereafter, he was ar­rested and charged with ag­gra­vat­ed crim­i­nal sexu­al as­sault and crim­i­nal sexu­al as­sault (720 ILCS 5/12-14(c), 12-13(a)(2) (West 1994)).   

At his arraignment, defendant plead­ed not guilty and requested a trial by jury.  In May 1996, de­fen­dant filed a mo­tion 
in
 
limine
 re­quest­ing the State be barred from in­tro­duc­ing at trial any state­ments made by him to the in­ves­ti­ga­tors regarding a no-con­test plea.  The court con­duct­ed a hear­ing on the motion, at which Woodard and Garrett testi­fied.  Defendant did not testi­fy.   After tak­ing the case under advisement, the court ruled in defendant's favor on the motion, stating: 

"[T]he court feels that this statement [(set forth above)] was plea related and that the de­fen­dant, under all the circumstances, prob­a­bly had a rea­sonable expectation in his own mind of some conces­sion when he made that state­ment; that he was basically beginning the process of at least some sort of a plea-re­lated nego­tiation."

On appeal, the State contends the court erred in find­ing defendant's statement plea related and inadmissible under Rule 402(f).  Rule 402(f) provides as follows:

"If a plea discussion does not re­sult in a plea of guilty, or if a plea of guilty is not accepted or is with­drawn, or if judgment on a plea of guilty is re­versed on direct or col­lateral review, neither the plea discus­sion nor any resulting agree­ment, plea, or judg­ment shall be admis­sible against the defendant in any criminal pro­ceed­ing."  134 Ill. 2d R. 402(f).

The purpose of this rule is to encourage the negotiat­ed disposi­tion of criminal cases by eliminating the risk a jury will hear statements the defendant made while negotiating a plea.  See 
Peo­ple v. Fried­man
, 79 Ill. 2d 341, 351-52, 403 N.E.2d 229, 235 (1980).  The char­acter­iza­tion of a defendant's state­ment as plea related must turn on the facts of each case.  
Friedman
, 79 Ill. 2d at 351-52, 403 N.E.2d at 235; 
Peo­ple v. Burns
, 188 Ill. App. 3d 716, 722, 544 N.E.2d 466, 470 (1989).  
Not all state­ments made in hopes of some con­ces­sions by the State are neces­sarily plea dis­cus­sions
.  
Peo­ple v. Victory
, 94 Ill. App. 3d 719, 722, 419 N.E.2d 73, 76 (1981); 
Peo­ple v. Rolih
, 233 Ill. App. 3d 484, 488, 599 N.E.2d 194, 197 (1992).  Accordingly, not all state­ments, howev­er dam­aging they might be, are insulated within the ambit of Rule 402(f).  See 
People v. Tennin
, 123 Ill. App. 3d 894, 897, 463 N.E.2d 202, 204-05 (1984) (and cases cited there­in).

The rele­vant in­qui­ries in de­ter­min­ing wheth­er a par­tic­u­lar state­ment is plea re­lated are (1) wheth­er the ac­cused ex­hib­it­ed a sub­jec­tive ex­pec­ta­tion to negoti­ate a plea and (2) wheth­er this ex­pec­ta­tion was reasonable under the to­tali­ty of the circum­stanc­es.  
Friedman
, 79 Ill. 2d at 351, 403 N.E.2d at 235.  De­spite the fact-specific nature of the issue presented, where, as here, nei­ther the facts nor credi­bili­ty of the wit­ness­es is con­tested, the issue is a legal ques­tion which a re­viewing court may consid­er 
de
 
novo
.  See 
Peo­ple v. Garriott
, 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 783 (1993).

The State contends the trial court erred in find­ing defendant's state­ment inadmissible because there was no evi­dence pre­sent­ed at the mo­tion hear­ing re­gard­ing his sub­jective intent in making the state­ment and be­cause any expec­tation his com­ments would be considered as plea nego­tia­tion was not ob­jec­tively rea­son­able under the totali­ty of the circumstanc­es.

First, we examine whether defendant exhibited a subjec­tive expectation of negotiating a plea.  De­fendant did not tes­tify regarding his subjective expectations in mak­ing the state­ment at issue.  Where a defendant's subjective expecta­tions are not explicit, a court may look to the objective cir­cum­stanc­es sur­rounding the statement in evaluating whether it was plea re­lated.  
Fried­man
, 79 Ill. 2d at 353, 403 N.E.2d at 236; 
Tennin
, 123 Ill. App. 3d at 897, 463 N.E.2d at 205.

At the time of this interview, de­fen­dant had not been formally charged with any offense.  No as­sis­tant State's At­tor­ney was pres­ent, defen­dant was person­ally ac­quainted with the in­ves­tiga­tors inter­view­ing him, and he had not re­quested the pres­ence of counsel.  Woodard tes­ti­fied de­fen­dant was calm dur­ing the in­ter­view and was talking freely with the inves­tiga­tors.  De­fen­dant made the statement at issue in the course of tell­ing the in­ves­ti­ga­tors an anec­dote about a pre­vi­ous traffic of­fense for which he was only fined fol­low­ing his entry in that case of a no-con­test plea.  In questioning by defense counsel at the motion hearing, Garrett ac­knowl­edged it was his impression when defendant related the Bloomington inci­dent, he was trying to dispose of the present matter "without actually saying that he had done anything wrong."  As stated, defendant did not 
offer
 to plead guilty or plead 
nolo
 
contendere
.

The hypo­thet­ical nature of defendant's question ("if [I] went to court and would plead no contest *** what would hap­pen [?]") demonstrates he was merely seek­ing in­for­ma­tion.  He did not ask for any concessions nor were any offered.  Nothing in defendant's demean­or or the sur­rounding cir­cum­stanc­es suggests he felt com­pelled, at that time, to make a deci­sion re­gard­ing the course of ac­tion to take in re­sponse to the victim's allega­tions.

In 
Victory
, after the de­fen­dant was arrested, he was transported to the coun­ty jail by police offi­cers. 
 While en route to the jail, the defendant stat­ed to one officer he real­ized he was charged with a Class X felo­ny for which he could get a maxi­mum sentence of 30 years.  The defen­dant stat­ed to the officer he could not "'afford to take an armed robbery charge, and that he would [be willing to] accept 10 years, and would the State's Attorney be willing to plea bar­gain.'"  
Victory
, 94 Ill. App. 3d at 721, 419 N.E.2d at 75.  The offi­cer advised the defen­dant he did not know and told the defen­dant he should contact the State's Attor­ney.  Another offi­cer trans­port­ing the defen­dant to jail testi­fied the defen­dant knew he was charged with a Class X felony and won­dered "'what type of an ar­range­ment could be made with the State's Attorney's Office.'"  
Victo­ry
, 94 Ill. App. 3d at 721, 419 N.E.2d at 75. 

The 
Victory
 court interpreted the defendant's com­ments to the offi­cers as ex­pressions of con­cern regarding the dura­tion of his pos­sible incarceration, de­signed to elic­it their opin­ion on that issue rather than to initiate plea nego­ti­ations.  The court concluded the defendant was not asking the offi­cers to plea bar­gain or convey any plea offer to the State's Attorney but was determining if the State's Attorney did plea bargain, to soothe his anxiety.  
Victory
, 94 Ill. App. 3d at 723-24, 419 N.E.2d at 77.  Simi­lar­ly here, we in­ter­pret defendant's ques­tion as an at­tempt to elic­it the opin­ions of the officers and not as the ini­tiation of a plea negotia­tion.  Like the statements analyzed in 
Vic­to­ry
, defendant's com­ments ap­pear to be in the nature of spec­ula­tion regarding the possible sen­tence and curiosity as to what would happen if he entered a no-contest plea, rath­er than a sub­jec­tive ex­pectation of initiating a plea discus­sion.  

Before a state­ment may be char­ac­ter­ized as plea re­lat­ed, "it must con­tain the rudi­ments of the nego­tia­tion pro­cess, 
i.e.
, a will­ing­ness by defen­dant to enter a plea of guilty in return for conces­sions by the State."  
Fried­man
, 79 Ill. 2d at 353, 403 N.E.2d at 236; accord 
Tennin
, 123 Ill. App. 3d 894, 463 N.E.2d 202.  In 
Fried­man
, the su­preme court held the de­fen­dant made an inad­missi­ble plea-related state­ment when he said he want­ed to make a deal and stat­ed gen­er­al­ly the bar­gain­ing terms.  
Friedman
, 79 Ill. 2d at 352, 403 N.E.2d at 235.  The State ar­gues be­cause de­fen­dant did not (1) 
offer
 
to
 
plead
 
guilty
 and (2) 
ask for any con­ces­sion(s)
 by the State in exchange, his dis­course with the offi­cers did not con­tain the ru­di­ments of the nego­tia­tion pro­cess, as re­quired by 
Fried­man
.  We agree.

In 
Rolih
, dur­ing a search of his home but prior to his ar­rest, the defen­dant stat­ed "'he wished to coop­erate in any way possi­ble for future consid­er­ation of the charges that would be pending against him'" and that "'he would do anything to assist [police] which would in turn assist him with--in consid­eration of the charges.'"  
Rolih
, 233 Ill. App. 3d at 486, 599 N.E.2d at 196.  The court found the defendant's state­ments did not show he was will­ing to plead guilty to charg­es against him and did not indi­cate under what terms the defendant would be will­ing to bar­gain.  Thus, the court con­clud­ed, the rudi­ments of a nego­ti­ated plea were lack­ing and the statements were admissi­ble.  
Rolih
, 233 Ill. App. 3d at 489, 599 N.E.2d at 198.

Similarly here, we do not interpret defendant's de­scrip­tion of his previous experience entering a no-contest plea, in a traf­fic case, as a proposal of bar­gain­ing terms for this case, where defen­dant was being ques­tioned regarding an al­leged sexu­al assault.  Dur­ing the in­ter­view, de­fen­dant denied the alle­ga­tions against him and did not indi­cate he would plead guilty to any charge based on those alle­gations.  Based on the objective circumstances surrounding his statement, we con­clude de­fen­dant re­ferred to his pre­vi­ous no-con­test plea only as a means of so­lic­it­ing in­for­ma­tion from the offi­cers and not to initiate nego­ti­a­tions.  The statement is not barred by Rule 402(f).

Last, defendant contends the evi­dence regarding his al­leged offer to plead no contest has no probative value on the issue of innocence or guilt but would have an extremely preju­di­cial ef­fect on a jury and should, there­fore, be excluded.

Defendant relies on our decision in 
Peo­ple v. Connolly
, 186 Ill. App. 3d 429, 542 N.E.2d 517 (1989).  
Contra
 
Tennin
, 123 Ill. App. 3d 894, 463 N.E.2d 202.  The 
Connolly
 court found the defendant's statement was not so clearly a demonstration of the defendant's willingness to bargain as that in 
Friedman
, but rec­ognizing the devastating effect it could have at trial, ruled to exclude it.  We are un­willing to extend that ruling to bar the defendant's state­ment here.

There were no charges filed nor the requisite indi­cia of a nego­ti­a­tion at­tempt by de­fen­dant dur­ing the con­ver­sa­tion at is­sue; ac­cord­ing­ly, we re­verse the trial court's order barring the in­tro­duc­tion of defendant's statement pursuant to Rule 402(f).  

Reversed.

 GREEN and McCULLOUGH, JJ., concur.