THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MELVIN BURNS, Defendant-Appellant.
Fourth District   No. 4—88—0874

Opinion filed September 28, 1989.—Rehearing denied October 23, 1989.

Daniel D. Yuhas and Judith L. Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Following a jury trial in McLean County, the defendant, Melvin Burns, was convicted of unlawful delivery of 15 grams or more of a substance containing cocaine, a Class X felony (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)), and sentenced to 17 years' imprisonment. On appeal, the defendant contends the trial court erred in denying his motion for substitution of judge. The defendant further contends evidence of his statement to the police was improperly admitted as it was made in the process of an unsuccessful plea negotiation.

At trial, David Lampert testified as a confidential source for the police. Lampert had agreed to make a drug purchase from defendant in exchange for the police dropping an investigation against Lampert concerning theft of a motorcycle. Lampert's testimony was that he knew defendant from a local health club and made a previous drug purchase from him. Lampert had been "shorted" one-half gram of cocaine in the previous purchase which defendant had promised to make up for in his next delivery. Lampert testified defendant phoned him on May 23, 1988, stating he had the cocaine and "Kim" from the health club would meet Lampert at the Kroger grocery store in Bloomington at 4:30 p.m. She would have 1½ ounces of cocaine plus the "shortage." Lampert was to pay Kim $1,000 at the time of the delivery. A little later, Kim Kloster called Lampert stating where she would be and what she would be wearing. Lampert previously knew Kim Kloster from the same health club. That afternoon Lampert and undercover officer Mike Bernardini drove to the Kroger store and picked up Kim Kloster. Lampert introduced Officer Bernardini as a friend and money source. Kloster handed the package of cocaine to Officer Bernardini, who gave it to Lampert to weigh. At this time, Officer Bernardini arrested both Kloster and Lampert.

Department of Criminal Investigation (DCI) special agent Michael

Bernardini corroborated Lampert's testimony. He added that Lampert had asked Kloster if she had seen defendant that day to which Kloster replied affirmatively. Officer Bernardini also testified Kloster told Lampert all of the drugs were there, what had been requested and "a little more." Officer Bernardini testified that he performed a field test which showed the presence of cocaine, and then testified as to the chain of custody.

Kim Kloster testified for the State. She was charged with the same Class X felony as defendant, but agreed to testify truthfully in exchange for a reduction to a Class 1 felony, six months' jail time and 48 months' probation. She testified she knew defendant from work and from living in the upstairs apartment of his home. Defendant asked her to deliver the cocaine to Lampert because if defendant got caught he would do a lot of time, but if she got caught she would get probation. Kloster further testified that on May 19, 1988, defendant had given her the package of cocaine. She kept the cocaine with her at all times until delivery to Lampert. Other than denying she knew anything about a prior shortage, Kloster's testimony corroborated that of Lampert and of Officer Bernardini.

DCI agent Gary King also testified for the State. He was one of the officers performing surveillance at the time of the drug transaction and assisted in the arrest of defendant. En route to jail, defendant told Officer King "he could help out," that he could "do in someone in Wisconsin" as long as he were not "thrown in jail."

The defense presented no evidence. The jury deliberated and quickly returned a verdict of guilty. The court entered judgment on the verdict. Defendant was later sentenced to 17 years' imprisonment.

This case was placed on the trial call of Judge Dearborn on July 11, 1988. On July 19, 1988, defendant filed a motion for substitution of judge which in its entirety stated:

"Your petitioner, MELVIN BURNS, by his attorney Paul G. Lawrence, respectfully represents to this Honorable Court that he is the defendant in this case, now pending before The Honorable Luther Dearborn.

Your petitioner further represents that he is charged with the offense of Unlawful Delivery of a Controlled Substance, and that if convicted, he could be sentenced for a Class X felony.

Your petitioner further represents that this petition has been filed within ten (10) days after the matter was placed on the trial call of the Honorable Luther Dearborn in accordance with Illinois Revised Statutes, Chapter 38, Section 114—5(a).

WHEREFORE, petitioner respectfully prays this Honorable

Court to allow a substitution of judges and to enter an order transferring the cause to the Honorable Chief Judge William Caisley of the Eleventh Judicial Circuit for reassignment."

An amended motion for substitution of judge was filed on July 28, 1988, and added only one new paragraph to the previous motion:

"Your petitioner further represents that he fears that he will not receive a fair and impartial trial in this cause if he is tried before the Honorable Luther Dearborn before whom this cause is pending because the said judge is prejudiced against him."

No action was taken on this case by the court between the assignment date of July 11, 1988, and the filing of the amended motion on July 28, 1988. On August 2, 1988, defense counsel argued the amended motion for substitution of judge. The trial court denied the motion, stating allegations of prejudice must be made within the statutory 10-day period. Defense counsel filed and argued a motion to reconsider, which trial court denied.

We affirm the decision of the trial court on this issue. Defendant sought an automatic substitution of judge under section 114—5(a) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(a)). The statute reads:

"Within 10 days after a cause involving only one defendant has been placed on the trial call of a judge the defendant may move the court in writing for a substitution of that judge on the ground that such judge is so prejudiced against him that he cannot receive a fair trial. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The defendant may name only one judge as prejudiced, pursuant to this subsection; provided, however, that in a case in which the offense charged is a Class X felony or may be punished by death or life imprisonment, the defendant may name two judges as prejudiced." (Ill. Rev. Stat. 1987, ch. 38, par. 114—5(a).)

To obtain an automatic substitution a defendant need only meet four requirements. These requirements are: (1) the motion is made within 10 days after the case is placed on the judge's call; (2) the motion may name only one judge unless the defendant is charged with a Class X felony, in which case he may name two judges; (3) the motion must be in writing; and (4) the motion must allege the trial judge is so prejudiced against the defendant that defendant cannot receive a fair trial. Though defendant's original motion was timely made, it failed to allege any prejudice. The allegation of prejudice was not made within the statutory 10-day period. In construing a statute, the language

should be given its plain and ordinary meaning. *People v. Brown* (1982), 92 Ill. 2d 248, 442 N.E.2d 136.

■■■ Defendant has failed to meet the minimal requirements for automatic substitution. Though it is well established substitution of judge provisions are to be liberally construed, the statute cannot be construed so as to contravene its express provisions. (*People v. Goss* (1960), 20 Ill. 2d 224, 170 N.E.2d 113.) To be entitled to relief, the defendant must comply with the express requirements of the statute. (*People v. Clay* (1984), 124 Ill. App. 3d 140, 463 N.E.2d 929.) Defendant's failure to comply with the statute bars the automatic substitution.

■■ The defendant's contention the absence of an allegation of prejudice is a mere technical error which should be excused is without merit. Defendant cites *People v. Howell* (1974), 16 Ill. App. 3d 989, 307 N.E.2d 172, *aff'd* (1975), 60 Ill. 2d 117, 324 N.E.2d 403. In *Howell*, defendant's motion for substitution of judge was not in writing and was not made within 10 days after the case had been placed on the trial call of the judge. The Fifth District Appellate Court opined these technical defects may be overlooked under a liberal construction of the statute. However, defendant's motion was properly denied as the trial judge had already ruled on several substantive issues in the case. The appellate court affirmed the decision of the trial court and the opinion of the Illinois Supreme Court did not address this issue. The comment in *Howell* was *dicta* and we decline to adopt that view.

This case is also distinguishable from *People v. Dieckman* (1949), 404 Ill. 161, 88 N.E.2d 443, relied on by the defendant. In *Dieckman*, the trial judge was assigned three days before trial. On the trial date, defendant filed a motion for substitution which failed to comply with the statutory requirement of an affidavit and the motion was denied. The defendant's requests to file a substitute motion and for a continuance were denied and the case proceeded to trial immediately. On appeal, it was held the trial court erred in denying defendant's motion to file a substitute motion since such action precluded defendant from making a timely application in proper form. The court cited the circumstances of the case. This holding is inapplicable to the case at bar. Defendant here was not precluded from filing a timely application in proper form or denied a reasonable opportunity to file a petition in proper form. The defendant had 10 days to file the proper motion and had failed to. Additionally, defendant's case did not proceed to trial immediately under the same circumstances as *Dieckman*.

The failure to allege prejudice is a failure to comply with the stat-

ute. A defendant who wishes to avail himself of an automatic substitution must meet the requirements of the statute. Defendant here did not do so, and the trial judge properly denied his motion.

■■ ■ Defendant's second issue concerns his statement to the police offering to assist the police if he was not put in jail. This statement was made to Officer King immediately after defendant's arrest and while en route to the police station. King reported defendant's statement as being "he could help out," that he could "do in someone in Wisconsin" as long as he were not "thrown in jail." Defendant contends his statement was an attempt to engage in plea negotiations and as such was inadmissible evidence. He maintains the admission of this testimony violated Supreme Court Rule 402(f) (107 Ill. 2d R. 402(f)) and denied him his right to a fair trial. The rule provides:

> "If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." (107 Ill. 2d R. 402(f).)

The purpose of this rule is to encourage plea negotiations by eliminating the risk of having the jury hear statements the defendant made while negotiating his plea. (*People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *People v. Tennin* (1984), 123 Ill. App. 3d 894, 463 N.E.2d 202.) However, not every statement making reference to a deal or omission of jail time is necessarily a plea discussion for purposes of the rule. (*People v. Williams* (1987), 151 Ill. App. 3d 1010, 503 N.E.2d 1090; *People v. Austin* (1984), 123 Ill. App. 3d 788, 463 N.E.2d 444; *Tennin*, 123 Ill. App. 3d at 898, 463 N.E.2d at 205.) The test to determine a plea-related statement is (1) whether the accused exhibited a subjective expectation to negotiate a plea, and (2) whether the expectation was reasonable under the totality of objective circumstances. (*Friedman*, 79 Ill. 2d at 351, 403 N.E.2d at 235.) Such a determination is fact specific. In *Friedman,* the supreme court held the defendant made an inadmissible plea-related statement when he said he wanted to make a deal and stated generally the bargaining terms. The *Friedman* court held:

> "Before a discussion can be characterized as plea related, it must contain the rudiments of the negotiation process, *i.e.,* a willingness by defendant to enter a plea of guilty in return for concessions by the State." *Friedman*, 79 Ill. 2d at 353, 403 N.E.2d at 236.

The Second District Appellate Court in *Tennin* (123 Ill. App. 3d at

897, 463 N.E.2d at 205) refused to characterize as plea related the defendant's nonspecific statement, "I want to make a deal." The *Tennin* court held:

"Defendant here has not made manifest any indication to plead guilty or what the terms are under which he would be willing to bargain. We cannot assume that every statement by a defendant to the effect of 'making a deal' is plea-related. There are other possible explanations underlying a motivation to make a 'deal,' such as a defendant negotiating for his release without a cash bond or on a low bond, or the dropping of charges against him in return for information he might supply. Not all statements made in hopes of some concession are necessarily plea discussions." *Tennin*, 123 Ill. App. 3d at 898, 463 N.E.2d at 205.

■ The rudiments of a negotiated plea are lacking in this case. There is no indication defendant intended or expected to enter a guilty plea to the charges for which he was arrested. There is no indication defendant ever intended to give a statement to the police about his involvement in the offense or that defendant intended to confess his offense. The record only indicates defendant was seeking to bargain for his immediate release. The record does not indicate defendant demonstrated a subjective expectation to negotiate a plea in his statement to Officer King. Accordingly, defendant's statements cannot be characterized as plea negotiations and are therefore admissible.

The prosecutor's reference to this evidence was proper. Defendant's statements were properly before the jury and constituted an appropriate subject for commentary and argument. The prosecutor's remarks did not deprive defendant of a fair trial.

The judgment of the circuit court of McLean County is affirmed.

Affirmed.

SPITZ and GREEN, JJ., concur.