THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERIC L. HART, Defendant-Appellant.

Fourth District    No. 4—02—0740

Opinion filed January 21, 2004.

Daniel D. Yuhas and Keleigh L. Biggins, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott Rueter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant, Eric L. Hart, was charged with armed robbery (720

ILCS 5/18—2(a) (West 2000)) and aggravated fleeing or attempting to elude a police officer (625 ILCS 5/11—204.1 (West 2000)). In January 2002, a jury found defendant guilty on both counts, and in May 2002, the trial court sentenced defendant to concurrent terms of 20 and 3 years' imprisonment, with credit for 369 days' time served. Defendant appeals, arguing he was denied a fair trial when the prosecutor elicited testimony that he attempted to plea bargain and commented on that attempt in closing argument. We reverse and remand.

## I. BACKGROUND

On May 20, 2001, a Clark Oil gas station in Decatur was robbed by a man wearing panty hose on his head and carrying a .22-caliber pistol. A worker at the gas station described the robber as a black male, mid to late twenties, about 5 feet 11 inches to 6 feet tall, 160 to 180 pounds, wearing either a black or blue "Starter" shirt with white or gold lettering across it, and blue jeans. Shortly thereafter, a police officer passed a vehicle containing a person matching the robber's description. The officer pursued the vehicle at speeds of up to 70 miles per hour. After the vehicle lost control and left the road, the suspect fled on foot. The suspect was apprehended and identified as defendant.

Michael Beck, former detective with the Decatur police department, testified at trial that he interviewed defendant. Beck first told defendant that he did not have to speak with him. Defendant spoke to Beck about a warrant on file that defendant thought had been taken care of. The following colloquy then took place:

"Q. [Assistant State's Attorney:] Okay. Uh—and after speaking with you about the warrant that he had thought was already previously taken care of, did he make any statements about the incident in which he was arrested?

A. [Beck:] Yes, I told him the reason that I was up there to interview him was in reference to the armed robbery, and at that time, I told him I knew he was involved in the armed robbery and he didn't offer any denial at that time. He did not deny being involved but asked me what I could do for him if he cooperated. I advised him at that time I couldn't make any promises to him if he cooperated; however, I would contact the State's Attorney's [o]ffice and advise them of his cooperation."

Beck testified defendant then requested to make a phone call to his mother, which he was allowed to do. Defendant said that he wanted to pray with his mother. When defendant finished praying, he told Beck that he wanted to think about whether he wanted to make a statement. That concluded the interview.

Defendant testified at trial that he was on his way to his mother's house to take care of his dogs when a police car pulled up behind him,

followed him for about a block, and turned on its lights. He drove on because he did not have a driver's license, a warrant was out for his arrest, and he wanted to park at a friend's house so that his car would not be towed. The police car hit him from the back and knocked him off the road. He was scared, so he jumped out of the car and ran.

During closing argument, defense counsel noted that defendant did not make an admission to Detective Beck, that the only thing defendant said was that he wanted to pray. The prosecutor subsequently argued:

> "The defendant, also, mentioned the fact that he wanted to pray [with] his mother is not an indication of guilt, but you remember what Officer Beck told you? He didn't just want to pray with his mother. He wanted to know what he would get or what kind of compensation or what kind of agreement or whatever he would get if he cooperated. And, [l]adies and [g]entlemen, only guilty men want to know what they get if they cooperate."

## II. ANALYSIS

■ Defendant did not object to the allegedly improper testimony and argument at trial, nor did he raise these issues in a posttrial motion. Under the plain-error rule, however, a reviewing court may consider a trial error that was not properly preserved (1) when the evidence is closely balanced, or (2) where the error is so fundamental and of such magnitude that the defendant has been denied a fair trial. *People v. Williams*, 193 Ill. 2d 306, 348-49, 739 N.E.2d 455, 477 (2000). The plain-error rule warrants our consideration of this allegation of error.

■ Supreme Court Rule 402(f) provides:

> "If a plea discussion does not result in a plea of guilty, *** neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." 177 Ill. 2d R. 402(f).

"The characterization of a statement as plea related, and therefore inadmissible under Rule 402(f), must necessarily turn on the facts of each case." *People v. Friedman*, 79 Ill. 2d 341, 351-52, 403 N.E.2d 229, 235 (1980). A great variety of situations are possible. The defendant may explicitly ask about making a deal, or the defendant may explicitly state that he has unconditionally decided to cooperate in the general hope that it will do him some good. The defendant may not be explicit and may take different positions. The detective may refuse to talk to the defendant at all about a plea negotiation, or as in this case, the detective may state that he will advise the State's Attorney's office of defendant's cooperation. The defendant's response may be that he will not talk to the detective, or he may admit a few things, or he may

make a full statement. The prosecutor may attempt to present the defendant's admissions to the jury, or as in this case, the prosecutor may simply tell the jury that defendant was interested in a plea negotiation. Many other variations are possible.

We should be careful about excluding an admission made by a defendant to a police investigator as an unsuccessful plea negotiation under Rule 402(f). Every guilty person who voluntarily speaks to a detective probably hopes to benefit from the conversation, either by convincing the detective that he did not commit the crime or by obtaining leniency for his cooperation. The police have an investigatory function that the courts and even the State's Attorney do not have. See 5 W. LaFave, J. Israel & N. King, Criminal Procedure § 21.2(h), at 106-07 (2d ed. 1999). We should not exclude a defendant's factual admissions to the police as a plea discussion, on the basis of a mere intention on the part of the accused to help himself by cooperating with the police. The accused must exhibit a subjective expectation to negotiate a plea. *Friedman*, 79 Ill. 2d at 353, 403 N.E.2d at 235. That expectation must be reasonable under the totality of the circumstances. *Friedman*, 79 Ill. 2d at 351, 403 N.E.2d at 235.

■ This case, however, does not involve the exclusion of a defendant's factual admissions to the police. There were no admissions here. This case involves the prosecutor's suggestion to the jury that defendant offered to enter into plea negotiations and that offer was an indication of guilt. The State argues that defendant's statement "did not in any way indicate his willingness to enter a guilty plea in exchange for concessions from the State." That argument, however, is inconsistent with the argument the prosecutor made to the jury, that defendant wanted to know what kind of agreement he would get if he cooperated and "only guilty men want to know what they get if they cooperate." It is inconsistent to argue that defendant did not intend to pursue plea negotiations and at the same time argue that defendant's attempt to pursue plea negotiations indicated his guilt.

The use of technical objections in an attempt to establish that defendant's inquiries have not risen to the level of a "plea discussion" has been rejected by the supreme court. It is not a good objection that defendant was speaking to a police officer, who did not have the authority to negotiate a plea, so long as defendant could reasonably have assumed the officer was an appropriate party to whom he could convey his offer to bargain. *Friedman*, 79 Ill. 2d at 352, 403 N.E.2d at 235. It is not a good objection that defendant did not get into specifics, such as whether the charge would be reduced or whether the sentence would be limited to a certain number of years. "A statement made as

an offer to enter negotiation is indistinguishable from a statement made at an advanced stage of the negotiation process in terms of its impact upon a jury." *Friedman*, 79 Ill. 2d at 352, 403 N.E.2d at 235. What is important is that there be a clear indication of defendant's intent to pursue plea negotiations. *Friedman*, 79 Ill. 2d at 352, 403 N.E.2d at 235.

Some decisions are willing to admit the very offer to make a deal. In *People v. Ward*, 192 Ill. App. 3d 544, 549, 548 N.E.2d 1120, 1124 (1989), the prosecutor argued to the jury that if defendant had not committed the offense, he would not have said, " 'hey, let's make a deal.' " The *Ward* court refused to follow *People v. Connolly*, 186 Ill. App. 3d 429, 436, 542 N.E.2d 517, 522 (1989), holding defendant's inquiry whether deals could be made in Madison County inadmissible. *Ward* determined there was no plea negotiation because the defendant was not offering to enter a plea; he was offering to incriminate others in unrelated incidents. *Ward* is inconsistent with *Friedman*, where the defendant did not make any specific offer to enter a plea, saying only " 'If I'm convicted, I would rather go to a [f]ederal prison ***,' " and that statement was held to be a plea negotiation. *Friedman*, 79 Ill. 2d at 350, 352, 403 N.E.2d at 234-35. It might be more accurate to view the *Ward* defendant's offer as an "offer to plead guilty plus." ("I will plead guilty *and* incriminate others in exchange for a reduced sentence.") It is difficult to understand how an attempt to negotiate a reduced sentence or other favorable treatment does not also involve an attempt to plead guilty.

*People v. Rolih*, 233 Ill. App. 3d 484, 599 N.E.2d 194 (1992), upon which the State relies, is very different from the present case. In *Rolih*, the police searched Rolih's residence pursuant to a warrant and seized cocaine. When the cocaine was shown to Rolih, he stated that " 'he wished to cooperate in any way possible for future consideration of the charges that would be pending against him.' " *Rolih*, 233 Ill. App. 3d at 486, 599 N.E.2d at 196. Rolih then told the detective that he had been using cocaine for five years and had been selling it for three to four months prior to the search. Rolih's factual admissions clearly were properly allowed into evidence. Rolih was caught red-handed and chose to unconditionally speak to the detective in hopes that his cooperation would eventually be taken into account. His comments showed nothing more than the intention every guilty person has of attempting to benefit from his cooperation. Rolih's statements constituted admissions, independent of any plea negotiation, not excluded under *Friedman*. *Friedman*, 79 Ill. 2d at 353, 403 N.E.2d at 236. It is true that on appeal Rolih singled out the introduction of his statements that he wished to cooperate, and argued they were plea

related under Rule 402(f). However, there was much more to the case than that. Rolih's statements that he wished to cooperate were dwarfed by his factual admissions that he used and sold cocaine.

If defendant in the present case had chosen to speak to Beck, it could be argued that he had abandoned his thoughts of plea negotiation and decided to go ahead and talk, unconditionally, about the facts of the case. The present case, however, is very different from *Rolih*. Defendant here did not choose to speak to Beck, unconditionally or otherwise. The prosecution here did not attempt to introduce any admissions defendant made to Beck, only the fact that defendant inquired about the possibility of a plea negotiation.

To allow the prosecutor to argue to the jury that defendant wanted to know "what kind of agreement" he would get if he cooperated, and "only guilty men want to know what they get if they cooperate," runs counter to the whole idea of Rule 402(f). *Friedman* recognized the significance of the negotiation process to the administration of justice and the devastating effect of the introduction of plea-related statements in the trial of the accused. *Friedman*, 79 Ill. 2d at 351, 403 N.E.2d at 235. "The purpose of our rule is to encourage the negotiated disposition of criminal cases through elimination of the risk that the accused enter plea discussion at his peril." *Friedman*, 79 Ill. 2d at 351, 403 N.E.2d at 235.

A further concern is Detective Beck's testimony that "I told [defendant] I knew he was involved in the armed robbery and he did not offer any denial at that time." Beck had previously told defendant that defendant did not have to speak with him. After a defendant has been arrested, and given his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), treating his silence as an admission cannot be justified. Even before that point, silence should be received as an admission only with extreme caution. *People v. Powell*, 301 Ill. App. 3d 272, 278, 703 N.E.2d 934, 938 (1998).

> "When statements are made in the presence of a defendant who is in no position to deny them, or if his silence is of such character that it does not justify the inference that he should have spoken, or if in any way he is restrained from speaking by either fear, doubt of his rights, instructions given by his attorney, or a reasonable belief it would be better or safer to keep silent, then standing silent does not amount to an admission." *People v. Soto*, 342 Ill. App. 3d 1005, 1014, 796 N.E.2d 690, 698 (2003) (a defendant and another prisoner shouting across a cell area).

## III. CONCLUSION

Because of the prosecutor's violation of Rule 402(f), we reverse and remand. In light of our resolution of this issue, we need not ad-

dress defendant's second argument, that his sentence should be reduced because he did not cause or threaten harm, and the trial court failed to give adequate weight to factors in mitigation.

Reversed and remanded.

TURNER, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully disagree with the majority, and I would affirm. Beck's testimony was properly admitted, and the prosecutor's comments in his rebuttal closing argument were properly made in response to defense counsel's closing argument comments.

By holding as it does, the majority chooses to ignore precedent, including that from the Fourth District, regarding the determination of when a defendant's statement can be characterized as plea related and therefore inadmissible under Rule 402(f) (177 Ill. 2d R. 402(f)).

In *People v. Burns*, 188 Ill. App. 3d 716, 722, 544 N.E.2d 466, 469 (1989), the defendant was arrested and made a statement en route to the station house that " 'he could help out,' " and that he could " 'do in someone in Wisconsin' " as long as he was not " 'thrown in jail.' " This court held that those statements were not plea related and, therefore, were admissible. *Burns*, 188 Ill. App. 3d at 723, 544 N.E.2d at 470. We found that the rudiments of a negotiated plea were lacking—nothing indicated that the defendant intended to enter a guilty plea to the charges for which he was arrested. *Burns*, 188 Ill. App. 3d at 723, 544 N.E.2d at 470. The record showed only that the defendant was bargaining for his immediate release and did not indicate that the defendant demonstrated a subjective expectation to negotiate a plea. *Burns*, 188 Ill. App. 3d at 723, 544 N.E.2d at 470; see also *People v. Tennin*, 123 Ill. App. 3d 894, 898, 463 N.E.2d 202, 205 (1984) ("I want to make a deal" found not to be plea related); *Ward*, 192 Ill. App. 3d 544, 549 N.E.2d 1120; *Rolih*, 233 Ill. App. 3d at 488, 599 N.E.2d at 197 (court found Rule 402(f) did not apply to the defendant's statements that he " 'wished to cooperate in any way possible for future consideration of the charges that would be pending against him' " and that " 'he would do anything to assist [the police] which would in turn assist [the defendant] with—in consideration of the charges' "); *cf. Friedman*, 79 Ill. 2d at 350, 403 N.E.2d at 234 (the defendant's statement that " '[i]f I'm convicted, I would rather go to a [f]ederal prison as opposed to a State prison' " followed his inquiry of " 'making a deal' "; court found that where a preamble is delivered, such as defendant's inquiry related to "making a deal," it could not be ignored

and was found to be a clear indication of the defendant's intent to pursue plea negotiations).

Not every statement made by a defendant in hopes of some concession is necessarily plea related, especially when the statement is as general and vague as the statement made by defendant in the present case, and defendant never indicated a willingness to *plead guilty* or even under what terms he would be willing to bargain for a guilty plea. The majority notes that "[t]he prosecution here did not attempt to introduce any admissions defendant made to Beck, only the fact that defendant inquired about the possibility of a plea negotiation." 345 Ill. App. 3d at 827. The reason the prosecution did not attempt to introduce any admissions is because defendant did not make any. Further, the prosecution did not tell the jury that defendant inquired about the possibility of a plea negotiation. Rather, the prosecution simply commented that defendant asked what the police officer "could do for him if he cooperated," more precisely, what benefits could defendant derive *if he cooperated—not if he pleaded guilty*. To rule as the majority permits even the slightest remark by a defendant to be characterized as a plea-related discussion.

Moreover, the prosecutor properly commented about defendant's statement in his rebuttal closing argument in response to defense counsel's closing argument. The prosecutor's remarks were properly made in response to defense counsel's closing argument. *People v. Hudson*, 157 Ill. 2d 401, 441, 626 N.E.2d 161, 178 (1993) (the prosecutor may respond to comments by defense counsel that clearly invite a response). Here, defendant's attorney stated in closing:

> "Now, another thing you need to look at is some of the other testimony. Now, they bring in \*\*\* Detective Beck, but [defendant] didn't make an admission to Detective Beck. The only thing Eric did was [say he] wanted to pray. I don't think prayer is an admission in this case. If you're faced with difficult situation; you've been arrested; I think it's only natural that you would want to pray."

It was defense counsel who referred to defendant's conversation with Beck, and it was in response to those remarks that the prosecutor in his rebuttal argued:

> "[D]efendant, also, mentioned the fact that he wanted to pray to his mother is not an indication of guilt, but you remember what Office Beck told you? He didn't just want to pray with his mother. He wanted to know what he would get or what kind of compensation or what kind of agreement or whatever he would get if he cooperated. And, [l]adies and [g]entlemen, only guilty men want to know what they get if they cooperate."

830

Defendant clearly opened the door, and the prosecutor could properly respond to defense counsel's comments and draw reasonable inferences therefrom. Moreover, it is inconsistent to allow defense counsel to fail to object to Beck's testimony at trial, to comment on the testimony in his closing argument, and then to argue on appeal that the prosecutor improperly used that testimony in his rebuttal argument.