THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PAUL G. COLLINS *et al.*, Defendants-Appellants.

Third District    Nos. 76-392, 76-401 cons.

Opinion filed November 30, 1977.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellants.

Thomas Homer, State's Attorney, of Lewistown (James E. Hinterlong, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendants Paul Collins and Howard McMillan were charged by information with burglary and felony theft. On August 8, 1976, a jury in the Circuit Court of Fulton County found both defendants guilty of burglary only. Collins received a one- to three-year prison sentence, and McMillan was sentenced to a prison term of two and one-half to seven and one-half years.

At trial Beryl Demott, an employee of International Harvester Company in Canton, Illinois, testified that he was near the plant's main gate at about 1:30 a.m. on November 20, 1975, when he noticed two individuals standing on the sidewalk in front of the plant parking lot. These individuals remained on the sidewalk for several minutes and appeared to be watching the main gate open and close. Demott saw them jump onto and over a small wall that separated the lot from the sidewalk, crouch down between two trucks in the first row of vehicles, and open the passenger door of one of the trucks. Demott brought this activity to the attention of some uniformed security guards, who immediately set out for the parking lot located across the street.

Demott continued to watch the parking lot and saw a man in a brown shirt remove a box from the truck and walk hurriedly towards the back of the lot. He watched as a guard pulled someone from out of the truck's cab and as a second guard held by the arm the man who had carried away the box. The man with the box broke loose and attempted to flee but was captured by a third security guard. Later, Demott and one of the guards found a box of tools in some bushes in the middle of the lot. Demott identified McMillan as the man who carried away the box and Collins as the man inside the truck, and indicated that the parking lot was lit up and "[j]ust like day."

Dennis Dawson was the security guard who captured Collins in the cab of the truck, and he identified him at the trial. He also testified that Collins could not explain his presence in the truck and had given him a phony name. Dawson also identified McMillan as the one who carried away the tools.

Lester Goyen was the security guard who initially apprehended McMillan, and he also identified both defendants at trial. Goyen testified that he saw McMillan crouching with his back to him in some bushes

located in the middle of the lot and that by the time McMillan turned around the two men were face to face. McMillan immediately said that he "was crossing the parking lot." Goyen grabbed McMillan's arm with his right hand and started to lead him back to the guard house. After walking some 125 feet together, McMillan broke loose and fled, but was captured by a third guard about a block away. Goyen recovered the box of tools in the exact spot where he had seen McMillan crouching, and he identified People's Exhibit No. 2 as the box of tools that he found in the bushes.

Howard McMillan denied taking the box of tools. He admitted running away from Goyen, but said that he was afraid he would be hurt. He also admitted, however, that Goyen did not threaten him. McMillan testified that he knew Collins, but stated that he was not the one who was with Collins in front of the parking lot. McMillan also testified that he had been previously convicted of burglary and theft. Paul Collins did not testify.

Jose Patino, an International Harvester employee and owner of the truck, testified that he had not authorized either defendant to enter his truck, but stated that he did not lock his truck before reporting to work. He identified the tools in the box as belonging to him, and valued them at $157.97. This figure was based on the wholesale price he had paid for the tools one to three years earlier.

The defendants' first contention is that the trial court committed reversible error by denying defense counsel the statutory right to directly question prospective jurors. (See Ill. Rev. Stat. 1975, ch. 38, par. 115—4(f).) However, based on our recent decision in *People v. Brumfield* (3d Dist. 1977), 51 Ill. App. 3d 637, 366 N.E.2d 1130, holding this statutory section unconstitutional, defendants' contention is without merit.

In a connected matter, the defendants argue that the trial court's denial of their motion for a continuance to prepare a written list of questions for the *voir dire* examination was an abuse of discretion requiring a reversal. A motion for a continuance is addressed to the discretion of the trial court and must be considered in light of the movant's diligence. (Ill. Rev. Stat. 1975, ch. 38, par. 114—4(e); *People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736, *cert. denied* (1962), 371 U.S. 853, 9 L. Ed. 2d 87, 83 S. Ct. 94.) At the same time, however, we will not reverse the trial court for denying a continuance absent an abuse of discretion. (*People v. Hayes* (1972), 52 Ill. 2d 170, 287 N.E.2d 465.) Cases holding that there is no abuse of discretion unless the denial prejudices the movant are legion. *People v. Canaday* (1971), 49 Ill. 2d 416, 275 N.E.2d 356; *People v. Latimer* (1966), 35 Ill. 2d 178, 220 N.E.2d 314; *People v. VanNorman* (1936), 364 Ill. 28, 2 N.E.2d 891.

Naturally, whether there has been an abuse of discretion depends on the particular facts and circumstances of each case. (*People v. Bevard* (3d Dist. 1977), 48 Ill. App. 3d 399, 362 N.E.2d 464.) In the instant case the

record shows that the trial court departed from the usual practice in Fulton County by refusing to allow the parties to directly examine the prospective jurors. Both defense counsel and the prosecutor registered surprise upon the learning of the court's intention to conduct the *voir dire*, although the record seems to indicate that they had been informed of this decision prior to the start of jury selection. The record also shows that the court stated that a continuance would not be proper because defendants had had adequate time to investigate the persons on the jury list and therefore should have been prepared to submit questions to the prospective jurors through the court. Indeed, the defense attorneys did submit at least five written questions to the court during *voir dire* and each question was put to the panel by the court. In fact, on several occasions the court followed up the submitted written questions with additional questions of its own.

■■ Assuming that the defense attorneys were diligent in this case, and despite the fact that both of them exercised all of their peremptory challenges during jury selection, we conclude that the court did not abuse its discretion under these facts. To begin with, there is no indication in the record that they did not have an adequate opportunity to investigate the qualifications of the persons available to them as jurors. Under similar circumstances it has been held that there is no error in refusing to grant a continuance for purposes of doing further investigative work. (See *People v. Turner* (2d Dist. 1965), 60 Ill. App. 2d 388, 208 N.E.2d 406.) Even more to the point is the total absence of any specific allegation of prejudice stemming from the court's refusal to grant a continuance. Recently in *People v. McGee* (1st Dist. 1977), 49 Ill. App. 3d 523, 364 N.E.2d 546, the court held that there was no abuse of discretion in refusing to grant a defendant's request for additional preparation time where he failed to allege in his brief that he was prejudiced. The same situation faces us in this case. Essentially, the defendants' brief invites us to find prejudice from the facts that we have outlined, but we decline to do so.

The defendants' last argument is that prosecutorial misconduct in the instant case requires a reversal of their burglary convictions. The specific conduct complained of is that the prosecutor conversed with Jose Patino during a brief recess from Patino's testimony. Following this recess Patino returned to the stand and was questioned by the State regarding the fair market value of the tools. One defense attorney witnessed this conversation and brought it to the court's attention, although he did not hear what was said. The court chastized the prosecutor for his actions.

■■ While we agree with the defendants that the prosecutor's conduct was improper, we cannot agree that the error requires a reversal of their burglary convictions. First of all, the prosecutor's conduct had absolutely no bearing on the burglary charge since the fair market value of stolen

goods is an element of theft, not burglary. Furthermore, the defendants were not convicted of theft in this case, but of burglary only, and the evidence of their guilt was, to say the least, overwhelming. Since the prosecutor's misconduct could not have contributed to the jury's verdict on the burglary charge, it follows that the error was harmless. See *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

Accordingly, the judgment of the Fulton County Circuit Court is affirmed.

Affirmed.

BARRY and ALLOY, JJ., concur.