THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STEVEN L. KENNEDY, Defendant-Appellant.

Third District   No. 79-456

Opinion filed September 8, 1980.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

Bruce W. Black, State's Attorney, of Pekin (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from an order of conviction entered by the Circuit Court of Tazewell County after jury trial. Defendant had been charged with robbery and theft from the person. He was found guilty of robbery and sentenced to seven years' imprisonment. The sentencing order does not show entry of judgment on the theft from the person charge.

On August 17, 1978, at 10:15 a.m., Evelyn Blankenship, co-owner of

Pete and Mary's Tavern in East Peoria, returned to her establishment from the bank. She carried a bag containing $10,000. A lone man, dressed like a woman and later identified as Scott Koch, approached her, grabbed the bag, shoved her against the side of a garage, and ran away with the money.

Koch, Gerald Sherman and the defendant were indicted for robbery and theft from the person of Evelyn Blankenship. The public defender was appointed to represent all three defendants, but he withdrew because Koch's defense was antagonistic to those of defendant and Sherman. After several changes of counsel, Daniel Lampitt was retained by the defendant to represent him.

Three days later Lampitt filed a written motion for a continuance, alleging he needed more time to prepare a defense because some of the State's witnesses had moved and because certain photographs had not been furnished in discovery. His motion was denied and the cause ordered to trial without delay.

At trial Koch testified that defendant and Sherman approached him on Friday or Saturday of the previous week and asked him to rob Mrs. Blankenship because they were frequent patrons of Pete and Mary's Tavern and would be recognized. On Sunday or Monday, Koch, Sherman and the defendant scouted the area looking for possible escape routes. They rode in defendant's Ranchero. This was corroborated by witnesses who saw Koch and two white males in defendant's Ranchero. Witnesses later identified photographs of defendant's Ranchero.

Koch testified that they cut a hole in the fence near the Cedar Street tunnel and marked the place defendant would pick him up after the robbery. A witness saw three men working on the fence and saw them place a stick near the roadway. Detective Duke testified that on the day of the robbery he saw a stick located near the westbound lane of the Cedar Street overpass. The weeds on the hillside leading to the roadway were broken down and there was a hole cut in the fence along the roadway.

On the day of the robbery Koch, dressed as a girl, went to the defendant's house and defendant, driving a Cutlass, took Koch to a parking lot next to the tavern. After the robbery Koch ran through the tunnel and was picked up by defendant. Defendant, Sherman and Koch divided the money, with Koch getting almost $3,000.

Koch testified that no promises were made to him in return for his testimony. He was, however, released on his own recognizance after his testimony before the grand jury. His defense attorney testified that no agreement had been made but Koch hoped for probation.

Koch had testified before the grand jury that he received $2,000 rather than $3,000. After the robbery Koch went to California where he rented an apartment for a month, purchased a car, and made a trip to Las Vegas where he gambled quite a bit.

Detective Paul Fischer testified that he spoke to an elderly stroke victim who saw Koch walk toward the tavern and about 15 minutes later come back wearing a costume.

Judy Cornelison testified that she saw three men engaged in unusual activity in the vicinity of the tunnel near the Cedar Street bridge. She identified Koch as one of the men. She also identified defendant's Ranchero, although she first said it was a station wagon. There was some variance between her description of the two men with Koch and the descriptions of defendant and Sherman.

Defendant did not testify on his own behalf, but he did present several witnesses. One witness, James St. Clair, testified that the Ranchero was borrowed on August 13, 1978, and not returned until late on August 15. The Ranchero was borrowed again on August 16 until August 22. It was not in running condition during the latter period. During cross-examination St. Clair was asked if he told Koch he was a "dead man." St. Clair denied it but said he was arrested for using a vulgar word. A witness seated next to St. Clair at the time of the alleged threat did not hear it. Three friends of Koch testified they did not hear the threat.

Defendant's girl friend testified that she owned a Cutlass but did not let defendant use it. The woman who lives with defendant's father testified that defendant had visited her home while he was driving the Cutlass.

Defense counsel suggested other possibilities for Koch's accomplices, if any; however, the jury found defendant guilty.

Defendant filed a post-trial motion alleging he was denied a fair trial because defense counsel was accused of tape recording Cornelison's pretrial interview without her permission and because there was testimony that a defense witness had threatened Koch by telling him he was a "dead man." His motion was denied.

Defendant was sentenced to seven years for robbery. There is no indication of entry of judgment for theft from the person.

On appeal defendant argues that he was not proved guilty beyond a reasonable doubt because the State's case depended almost entirely upon the testimony of an alleged accomplice who was inherently unbelievable; that the evidence was insufficient to support a conviction for robbery; that the introduction of threats by a defense witness to a State's witness was unfair because no connection to defendant was shown; that he was denied a fair trial when his counsel was accused of improper methods during a pretrial interview; that the trial court erred in denying his motion for continuance; and that the trial court erred in permitting the public defender to withdrawn without the consent of defendant. This last issue was withdrawn by defendant.

The trier of fact determines the credibility of all witnesses (*Diversey Liquidating Corp. v. Neunkirchen* (1939), 370 Ill. 523, 19 N.E.2d 363) and

the weight to be given their testimony (*Bauske v. City of Des Plaines* (1957), 13 Ill. 2d 169, 148 N.E.2d 584). The testimony of an accomplice witness, whether corroborated or uncorroborated, is sufficient for conviction if the trier of fact is satisfied beyond a reasonable doubt that the testimony is true. (*People v. Farnsley* (1973), 53 Ill. 2d 537, 293 N.E.2d 600.) While such testimony is to be viewed with suspicion and the motives of the witness carefully considered, the weight to be given the testimony is a matter for the trier of fact. (*People v. Hansen* (1963), 28 Ill. 2d 322, 192 N.E.2d 359.) A reviewing court will not disturb that determination unless it is plainly apparent that defendant was not proved guilty beyond a reasonable doubt. *People v. Wilson* (1977), 66 Ill. 2d 346, 362 N.E.2d 291; *People v. Cowherd* (1980), 80 Ill. App. 3d 346, 399 N.E.2d 672.

In the instant case Koch's testimony was corroborated in many ways. Witnesses saw the planning of the robbery and the preparation for escape. They identified defendant's Ranchero as the one they saw Koch and two others use during the preparation. There was also testimony that the escape route Koch described did exist. Another witness testified defendant *sometimes drove a Cutlass. There was also testimony that an elderly stroke victim had seen Koch on foot approaching and leaving the tavern.*

After reviewing the record, we cannot say that the determination of the jury was in error. Contradictory evidence merely affects credibility and is one more factor to be considered by the trier of fact. (*People v. Mannen* (1977), 46 Ill. App. 3d 61, 360 N.E.2d 563.) We believe that there was sufficient evidence presented to the jury so that they could find defendant was proved guilty beyond a reasonable doubt.

■■■ Defendant also argues that his conviction was unsupported by the evidence because it showed only a nonviolent taking. We do not agree, because Evelyn Blankenship was approached from behind, her money bag was grabbed, and she was pushed back against a garage wall. Defendant argues that the force used here is similar to the incidental force in a purse snatch. This court has ruled that the force incidental to the taking of property from one's person is substantially different from the force used to accomplish the taking by overcoming the resistance of the victim. (*People v. Patton* (1978), 60 Ill. App. 3d 456, 376 N.E.2d 1099, *aff'd* (1979), 76 Ill. 2d 45, 389 N.E.2d 1174.) We believe that the latter force was the type in the instant case. If force is used to injure the victim or to overcome a struggle or resistance by the victim to the taking of his property, the crime is robbery, not theft. *People v. Patton.*

■■ Next, defendant argues that the testimony of Koch that he had been threatened by a defense witness was prejudicial and with this contention we agree. The State has argued that the threat was used to impeach the testimony of the defense witness.

In the instant case we find that while defendant was prejudiced, the

prejudice was diluted by the testimony of St. Clair and the testimony of another witness who was seated next to him when he allegedly threatened Koch and who stated that the threat was not heard. In addition St. Clair had been arrested for saying a vulgar word to Koch. No mention of the threat was made at the time.

While we find that the testimony regarding the threat was improperly admitted, we do not find that defendant was substantially prejudiced by the testimony. We will not reverse a conviction unless we find the prejudice to defendant was substantial. *People v. White* (1977), 52 Ill. App. 3d 517, 367 N.E.2d 727.

■■ Defendant also argued that his counsel was accused of improper conduct because he taped a pretrial interview with Judy Cornelison. Defendant has cited many cases in which counsel was accused of lying or improper conduct. There is nothing improper about taping witness interviews if the witness consents. Mrs. Cornelison was not sure if she should consent, but she apparently did not refuse. While we think the questions should not have been asked, we do not find them prejudicial. Unless an error substantially prejudices a defendant, it is harmless because it is not a material factor influencing his conviction. *People v. Driver* (1978), 62 Ill. App. 3d 847, 379 N.E.2d 840.

■■ Lastly, defendant argues that the court erred in not granting him a continuance. The granting of a continuance is within the sound discretion of the trial court (*People v. Bain* (1972), 4 Ill. App. 3d 442, 280 N.E.2d 776), and such determination will not be reversed by a reviewing court unless there has been an abuse of discretion (*People v. Bain*). The denial must prejudice defendant in the preparation of his defense before there exists an abuse of discretion. (*People v. Collins* (1977), 54 Ill. App. 3d 873, 370 N.E.2d 276.) Whether there was prejudice depends upon the facts of each case, including the diligence shown on behalf of the defendant and the extent to which he was prejudiced in the preparation of his case by the denial. (*People v. Bevard* (1977), 48 Ill. App. 3d 399, 362 N.E.2d 464.) If defense counsel performs competently throughout the trial, we are loath to find prejudice. *People v. Pinkston* (1976), 44 Ill. App. 3d 357, 357 N.E.2d 1386.

In the instant case we do not find defendant was prejudiced by the denial of a continuance. There is nothing in the record to indicate defendant was embarrassed in the preparation of his defense. His attorney competently represented him throughout the trial.

For the reasons stated above, the judgment of the Circuit Court of Tazewell County is hereby affirmed.

Affirmed.

BARRY and STENGEL, JJ., concur.