# Illinois Official Reports

## Appellate Court

---

### *People v. Jackson*, 2015 IL App (3d) 140300

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LATEEF M. JACKSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0300 |
| Filed | December 9, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 13-CF-243; the Hon. Jeffrey W. O'Connor, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Nate Nieman, of Nieman Law Group, of Moline, for appellant.<br><br>John L. McGehee, State's Attorney, of Rock Island (Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of Ottawa, of counsel), for the People. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Presiding Justice McDade concurred in the judgment and opinion.<br>Justice Holdridge specially concurred, with opinion. |

**OPINION**

¶ 1 Defendant, Lateef M. Jackson, appeals his conviction of aggravated battery (720 ILCS 5/12-3.05(b)(2) (West 2012)), arguing that the trial court erred in: (1) granting the State's motion to substitute judge; (2) finding K.R.L. competent to testify; and (3) failing to tender a cautioning instruction to the jury after admitting hearsay statements pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2012)). We affirm.

¶ 2                                            FACTS

¶ 3 Defendant was charged by information with aggravated battery (720 ILCS 5/12-3.05(b)(2) (West 2012)), in that defendant allegedly knowingly caused bodily harm to K.R.L., a child under 13 years of age, in that: defendant punched K.R.L. repeatedly in the stomach. Subsequently, defendant was charged by information with a second count of aggravated battery (720 ILCS 5/12-3.05(b)(1) (West 2012)) in that defendant knowingly caused bodily harm to K.R.L. by punching K.R.L. repeatedly in the abdomen thereby bruising an organ in his abdomen.

¶ 4 On March 26, 2013, defendant filed a motion to substitute Judge F. Michael Meersman pursuant to section 114-5(a) of the Code (725 ILCS 5/114-5(a) (West 2012)). At a hearing on March 26, 2013, Judge Meersman noted that defendant had filed a motion to substitute judge. Judge Meersman advised defendant that his case would be transferred to Judge Walter Braud's schedule and that defendant's preliminary hearing would be at 11 a.m. on April 5, 2013.

¶ 5 On March 27, 2013, the State filed a motion to substitute Judge Braud. The motion stated in its entirety:

> "NOW COMES the People by JENNIFER A. GARDNER, Assistant State's Attorney, and moves this Honorable court to substitute the Honorable Judge WALTER BRAUD, in the above-captioned cause pursuant to 725 ILCS 5/114-5, and states as its reason that the State is entitled to one substitution of Judge (without cause) as a matter of right.
>
> WHEREFORE the People pray that this Court enter an order substituting the Honorable Judge WALTER BRAUD in the above-captioned case."

¶ 6 Defendant filed a resistance to the State's motion to substitute, alleging that the motion was legally deficient because it failed to plead prejudice on the part of Judge Braud. Subsequently, defendant also filed a motion to strike the State's motion to substitute on the basis that the motion failed to allege prejudice.

¶ 7 On April 2, 2013, a preliminary hearing was held before Judge Jeffrey O'Connor at which the court found probable cause. Defendant pled not guilty. The State's attorney said, "Your Honor, I guess, we formally place the matter on Judge Braud's schedule and then we'll make a motion–." Judge O'Connor replied that the State could address that later. On April 5, 2013, the parties appeared before Judge Meersman. Judge Meersman told them to set the State's motion to substitute before Judge Braud the following week.

¶ 8 On April 8, 2013, Judge Braud presided over a hearing on the State's motion to substitute judge and defendant's resistance to that motion. At the hearing, the State filed an amended

motion to substitute judge, which was identical to its original motion except that it cited specifically to subsection (c) of section 114-5 of the Code (725 ILCS 5/114-5(c) (West 2012)). Defendant asked that the trial court strike the State's amended motion because it still failed to allege that Judge Braud was prejudiced against the State. After reviewing case law submitted by the parties, Judge Braud denied the motion to substitute on the basis that the State was using substitutions pursuant to section 114-5(c) to undermine the trial call:

> "Okay. What this [case] says is that the State has an absolute right to make a substitution unless there is reason to believe that the State is using those substitutions to undermine the trial call. In other words, if every time there's a case of a certain type that's coming up and the State decides to substitute a certain judge, they are going to have to put on a showing that that is not the case.
>
> And that's clearly is [*sic*] the case, and so is [*sic*] the motion to substitute is denied."

¶ 9        On April 11, 2013, the State filed a second amended motion to substitute Judge Braud, which did contain an allegation of prejudice. Defendant filed a resistance to the State's second amended motion to substitute and a motion to strike on the bases that: (1) the matter had already been decided by the court on April 8; and (2) the second amended motion to substitute was untimely filed, as it was not filed within 10 days of the case being assigned to Judge Braud's trial call.

¶ 10        On April 15, 2013, the State filed a motion to reconsider the trial court's April 8 ruling. The next day, Judge Braud entered a written order granting the State's motion to reconsider and assigning the case to Judge Frank Fuhr. Defendant filed a resistance to the State's motion to reconsider the same day that the order was entered. The following day, defendant filed a motion to reconsider the court's ruling on the State's motion to reconsider.

¶ 11        A hearing on defendant's motion to reconsider was held on April 23, 2013. Defendant argued that the State's original motion to substitute judge was timely filed but deficient because it lacked an allegation of prejudice on the part of Judge Braud. Judge Braud denied defendant's motion to reconsider. Judge Braud explained that he refused to grant the motion to substitute originally because "there is a provision that says that the State has no right to blanketly *** substitute judges, because it interferes with the chief judge's ability to assign cases." Judge Braud further stated that before the current State's Attorney took office, the State's Attorney had a policy of constantly substituting him on cases of the same type as the instant case. However, Judge Braud explained, there had been no indication of blanket substitutions since the current State's Attorney took office, so he could not find that the State's Attorney's office was in violation of the rule. Judge Braud stated that the case was assigned to Judge O'Connor.

¶ 12        The State filed a notice of intent to use certain hearsay statements of the alleged victim, four-year-old K.R.L., pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2012)). A hearing before Judge O'Connor was held on the State's motion. The State called three witnesses: (1) Briana Pilcher, K.R.L.'s mother; (2) Tiffany Massey, Pilcher's coworker and neighbor; and (3) Marcella O'Brien, a police department detective. All three witnesses testified as to statements that K.R.L. made to them after the incident in question. The court ruled that the three witnesses would be able to testify at trial as to K.R.L.'s hearsay statements if K.R.L. was unavailable as a witness.

¶ 13        A jury trial was held. K.R.L. testified as the State's first witness. Prior to K.R.L.'s testimony, the court asked K.R.L. what his name was, and K.R.L. stated his first name. The

trial court asked K.R.L. if he knew what it meant to tell the truth, and K.R.L. replied, "Yeah." The court asked K.R.L. if he would tell the truth that day at trial, and K.R.L. said, "Yeah." The following exchange between K.R.L. and the court took place:

> "THE COURT: Now, if I were to tell you that this object, this thing right here, is blue, would that be the truth or would that be a lie?
>
> THE MINOR: A lie.
>
> THE COURT: What color is it?
>
> THE MINOR: Yellow.
>
> THE COURT: Okay. So it's important that all these people here hear what you have to say, but you have to promise to tell the truth, okay?
>
> THE MINOR: Okay."

¶ 14　　K.R.L. testified that he was four years old. He stated the names of his three sisters. K.R.L. stated that he lived with his sisters and his mom. K.R.L. remembered having to take a helicopter ride because his stomach was hurt. The State's Attorney asked K.R.L. what happened to make his stomach hurt and who hurt his stomach, but K.R.L. did not answer the questions. The State's Attorney asked K.R.L. what his stomach was hurt with, and K.R.L. stated that his stomach was hurt with a fist. The State's Attorney asked K.R.L. to demonstrate on a chair how his stomach was hurt.

¶ 15　　At that point, defense counsel objected on the bases that the State lacked a foundation, was leading the witness, having the witness punch a chair was prejudicial and not probative, and K.R.L. was incompetent to testify. Defense counsel additionally noted that K.R.L. was not answering the questions. The court replied that defense counsel's objection was premature.

¶ 16　　K.R.L. then testified that he could not remember where he went in the helicopter, but said that a doctor helped him with his stomach. The State's Attorney asked K.R.L. if he could show with his body what was done with the fist, but K.R.L. did not respond. K.R.L. stated that defendant was the one who hurt his stomach. K.R.L. said that he saw defendant in the courtroom. The State's Attorney asked if K.R.L. wanted to come down and point to defendant, but K.R.L. shook his head. The State's Attorney asked K.R.L. if he wanted to show with his hand how his stomach was hurt, and K.R.L. shook his head. The State's Attorney asked K.R.L. if he told anyone what happened after his stomach was hurt, and K.R.L. did not respond.

¶ 17　　After a brief recess, the State resumed its direct examination of K.R.L. Before K.R.L. resumed testifying, the trial court said to K.R.L., "[W]e have had a break and you have spoken with some people. Do you promise that what you tell us now will be the truth?" K.R.L. replied, "Yeah."

¶ 18　　K.R.L. again indicated that his stomach had been hurt with a fist, but refused to demonstrate how the fist hurt his stomach. K.R.L. stated that his stomach was hurt in his room. K.R.L. stated that no one else was in the room with him when he was hurt. K.R.L. said that defendant had the fist. K.R.L.'s hands and feet were tied up with clothes while his stomach was being hurt. K.R.L. could not remember how he was able to get out of the clothes that he was tied up with. K.R.L. then identified defendant in court as the one who hurt his stomach.

¶ 19　　On cross-examination, K.R.L. testified that someone had promised him a lot of chocolate ice cream during the break. A few people came up to K.R.L. and talked to him and told him what to say. K.R.L. was saying what they told him to say. Defense counsel asked K.R.L. if he used to call defendant something other than his name, and K.R.L. said, "No."

¶ 20      Pilcher testified that she was K.R.L.'s mother and that she had three other children. On the date of the incident, Pilcher lived with her children and was dating defendant. Pilcher's children used to call defendant "Mommy's friend," and they never referred to anyone else by that name. After the incident, Pilcher told her children that defendant was no longer her friend, so the children no longer called him "Mommy's friend." The night before the incident, Pilcher gave K.R.L. a shower and did not see any marks on his body.

¶ 21      On the date of the incident, defendant came over in the morning to babysit K.R.L. and his older sister, L.L., while Pilcher was at work. When Pilcher returned home at approximately 3:30 p.m., K.R.L. and L.L. were napping. Defendant left a few hours later. K.R.L. woke up from his nap after defendant left. K.R.L. said that his stomach hurt. Pilcher took K.R.L. into the bathroom because she thought he might vomit. Pilcher removed K.R.L.'s shirt and saw bruises on his abdomen. Pilcher asked K.R.L. what happened, and K.R.L. said defendant tied his hands and feet up with pants and a shirt and punched him in the stomach. K.R.L. said defendant did this to make K.R.L. stronger. Pilcher asked K.R.L. several times who hurt him, and each time K.R.L. said "your friend" or "Mommy's friend."

¶ 22      Pilcher went downstairs and asked her neighbor, Massey, to come upstairs. Massey came up, and Pilcher showed her K.R.L.'s bruises. Pilcher called the police, and an officer arrived. Pilcher showed the officer K.R.L.'s bruises and the officer took pictures. As soon as the officer left, Pilcher, Massey, and K.R.L. drove to Trinity hospital. K.R.L. was subsequently airlifted to a hospital in Peoria, Illinois.

¶ 23      Massey testified that she was Pilcher's coworker and neighbor. On the date of the incident, Pilcher asked Massey to come to her apartment. Massey went to Pilcher's apartment. K.R.L. was lying in a chair and covered with a blanket. Pilcher lifted the blanket and Massey observed bruising on K.R.L.'s abdomen and back. K.R.L. told Massey "Mommy's friend" did it to make him stronger. K.R.L. said defendant tied him up with a pair of red pants and punched him in the stomach to make him stronger.

¶ 24      Dr. Michael Barr testified that he examined K.R.L. when he arrived at the emergency room. K.R.L. had bruising all over his abdomen and his lab tests revealed significantly elevated liver and pancreatic enzymes. A computerized tomography (CT) scan of K.R.L. showed fluid in the abdomen, which led Barr to believe K.R.L. might have intra-abdominal bleeding. Barr opined that the injuries occurred one hour to two days before K.R.L. came to the emergency room.

¶ 25      Dr. Richard Pearl, a pediatric surgeon, testified that he treated K.R.L. the day after the incident. K.R.L. had visible injuries to his face, abdomen, and extremities, including evident bruises. K.R.L's lab tests showed that his liver enzymes were significantly elevated, which indicated that K.R.L.'s liver had been bruised from blunt force trauma. A CT scan of K.R.L.'s abdomen showed bruising all over K.R.L.'s abdominal wall. K.R.L.'s small intestine was compressed against his spine, and his small and large intestines had been bruised. Pearl opined that the combination of bruising to the liver and the intestines showed that K.R.L. had been battered. K.R.L.'s bruising was not a result of trivial trauma like a fall; rather, it required a real beating.

¶ 26      Dr. Craig Mitchell, a pediatric radiologist, testified that he reviewed CT scans of K.R.L.'s abdomen and pelvis taken the day after the incident. The scans showed bruising in the small intestine. Unless the patient has a history of bleeding problems, the cause of the bruising is

trauma. The scan also showed unusual enhancement of the kidneys. Mitchell opined that the trauma occurred within 24 to 48 hours of the CT scan.

¶ 27    O'Brien, a police investigator, testified that she visited K.R.L. in the hospital in Peoria the day after the incident. O'Brien observed a mark on K.R.L.'s forehead, scratches on his nose, and bruises on his abdomen. K.R.L. appeared to be very uncomfortable. O'Brien asked K.R.L. how he hurt his stomach, and K.R.L. replied, "My daddy." O'Brien asked K.R.L. how it happened and K.R.L. said, "Mommy's friend done it." O'Brien asked K.R.L. why his mommy's friend did it, and K.R.L. did not know. O'Brien asked K.R.L. where it happened, and K.R.L. said it happened in his bedroom. K.R.L. said "Mommy's friend" put him on the bed and punched him in the stomach. K.R.L. made a fist and demonstrated how "Mommy's friend" punched him in the stomach. K.R.L. said that his hands and feet were tied up at that time with pants and a shirt. K.R.L. was not wearing clothing.

¶ 28    O'Brien showed K.R.L. several photographs of men that were approximately the same age, race, and build as defendant. K.R.L. correctly identified a photograph of defendant as "Mommy's friend." K.R.L. identified a second photograph as "Mommy's friend" as well.

¶ 29    After the conclusion of the trial, the court delivered jury instructions. In so doing, the court advised the jury as follows:

> "Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his age, his memory, his manner while testifying, any interest, bias, or prejudice he may have and the reasonableness of his testimony considered in light of all the evidence in this case."

¶ 30    The jury found defendant guilty of both counts of aggravated battery. The trial court sentenced defendant to 14 years' imprisonment on count II. The trial court dismissed count I, finding it to be a lesser included offense of count II.

¶ 31                                    ANALYSIS
¶ 32                       I. State's Motion to Substitute Judge
¶ 33    On appeal, defendant first argues that the trial court committed reversible error in granting the State's motion to substitute judge brought pursuant to section 114-5 of the Code (725 ILCS 5/114-5 (West 2012)) because the State failed to allege that the trial judge was prejudiced, as required by section 114-5(c). Section 114-5(c) provides:

> "Within 10 days after a cause has been placed on the trial call of a judge the State may move the court in writing for a substitution of that judge on the ground that such judge is prejudiced against the State. Upon the filing of such a motion the court shall proceed no further in the cause but shall transfer it to another judge not named in the motion. The State may name only one judge as prejudiced, pursuant to this subsection." 725 ILCS 5/114-5(c) (West 2012).

¶ 34    Whether the State complied with the pleading requirements of section 114-5(c) is a question of law which we review *de novo*. *People v. Chapman*, 194 Ill. 2d 186, 217 (2000) ("*De novo* review is appropriate *** when there are no factual or credibility disputes, and the appeal therefore involves a pure question of law."). We find that, although the trial court erred in granting the State's motion to substitute judge because the motion failed to allege that the

trial judge was prejudiced against the State, the error was harmless because defendant has offered no evidence that he suffered prejudice as a result of the error.

¶ 35    Initially, we find that the trial court erred in granting the State's motion to substitute Judge Braud because both the State's initial motion filed on March 27, 2013, and the amended motion filed on April 8, 2013, failed to allege that Judge Braud was prejudiced against the State. Under section 114-5(c), the State may move for an automatic substitution of judge if the State's motion: (1) is filed within 10 days after the cause has been placed on the trial call of a judge; (2) names only one judge; (3) is in writing; (4) alleges that the trial judge is prejudiced against the State; and (5) is made before any substantive rulings in the case. *People v. Schneider*, 375 Ill. App. 3d 734, 748 (2007). See also *People v. McDuffee*, 187 Ill. 2d 481, 487-88 (1999) (listing the same five requirements for a defendant seeking an automatic substitution under section 114-5(a)). Because the State's motion to substitute and the amended motion to substitute did not allege that Judge Braud was prejudiced against the State, the State was not entitled to an automatic substitution of judge under section 114-5(c).

¶ 36    Although the State's second amended motion to substitute judge did allege prejudice, the State concedes that said motion was untimely, as it was filed more than 10 days after the cause had been placed on Judge Braud's trial call.

¶ 37    We reject the State's position that its original motion to substitute was not fatally defective for failing to specifically allege prejudice because prejudice under a section 114-5 motion to substitute is "essentially presumed." It is true that prejudice is "essentially presumed" in the context of a section 114-5(c) motion in the sense that "[t]he State has an absolute right to one substitution of judge upon the timely filing of a written motion alleging that the 'judge is prejudiced against the State.' " *People ex rel. Baricevic v. Wharton*, 136 Ill. 2d 423, 435-36 (1990) (quoting Ill. Rev. Stat. 1987, ch. 38, ¶ 114-5(c)). Even so, the State must still follow the requirements of section 114-5(c) to exercise its right to automatic substitution, including specifically alleging that the trial judge is prejudiced. There is no requirement that the State must include details supporting the allegation of prejudice. However, under section 114-5(c), the State must still assert that the trial court is prejudiced. There is no magic in using the word "prejudice," but the motion seeking the automatic substitution must make the claim, in writing, on the ground that the judge is prejudiced against the State. Contrary to the State's position, merely citing to section 114-5 did not satisfy the requirement that the State allege Judge Braud's prejudice against it. Citing section 114-5 does not give rise to a presumption of prejudice absent an allegation of prejudice. In contrast to the criminal procedure for a substitution, in the civil context each party has a right to one substitution of judge without cause when a timely motion is made. 735 ILCS 5/2-1001(a)(2) (West 2012). The civil motion does not have to allege the judge is prejudiced against the moving the party. See *Scroggins v. Scroggins*, 327 Ill. App. 3d 333, 335-36 (2002).

¶ 38    We find *People v. Burns*, 188 Ill. App. 3d 716 (1989) to be instructive. In *Burns*, the defendant filed an automatic motion to substitute judge under section 114-5(a) of the Code which contained a citation to section 114-5(a) but failed to allege that the trial judge was prejudiced against the defendant. *Id*. at 719-20. Seventeen days after the case was placed on the judge's trial call, the defendant filed an amended motion to substitute judge that contained an allegation of prejudice. *Id.* at 720. The *Burns* court affirmed the trial court's denial of the motion, holding that the defendant failed to meet the "minimal requirements for automatic substitution" because the defendant failed to comply with the statutory requirements that a

motion alleging that the trial judge was prejudiced be filed within 10 days of assignment. *Id.* at 721.[1]

¶ 39    Although we find that the trial court erred in granting the State's noncompliant motion to substitute judge, we find said error to be harmless because defendant has made no showing that he suffered prejudice as a result of the trial court's error. *People v. Kennedy*, 88 Ill. App. 3d 365, 369 (1980) ("Unless an error substantially prejudices a defendant, it is harmless because it is not a material factor influencing his conviction."). *People v. Kittinger*, 261 Ill. App. 3d 1033, 1040 (1994) ("Unless a trial court's error prejudiced the defendant, that error will be deemed harmless."). On review, "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Ill. S. Ct. R. 615(a).

¶ 40    A defendant has no right to trial before a specific judge. *People v. Dixon*, 133 Ill. App. 3d 450, 452 (1985). See also *People v. Williams*, 124 Ill. 2d 300, 308 (1988) ("[D]ue process requires only an impartial judge, not a choice of judge. A litigant does not have the right under due process to have his case heard by a particular judge."). In *People v. Marshall*, 256 Ill. App. 3d 310 (1993), the court refused to extend the well-established rule that a trial court's subsequent rulings are void following a wrongful *denial* of a defendant's section 114-5(a) motion to substitute judge to situations where a trial court improperly *grants* the State's section 114-5(c) motion to substitute judge, reasoning that "a defendant has no indefeasible right to have his case tried before a particular judge." *Id.* at 318. Thus, defendant had no right to have his case heard before Judge Braud rather than Judge O'Connor. Absent some showing that defendant was actually prejudiced by the trial court's granting of the State's motion to substitute Judge Braud, we decline to reverse defendant's conviction and grant a new trial.

¶ 41    Although defendant makes no claim that he suffered any specific prejudice due to the trial court's decision to grant the State's motion to substitute, defendant claims that his right to a fair trial would be undermined if we did not "hold the State to the same procedural rules as the defendant" by reversing his conviction due to the State's failure to follow the procedural requirements of section 114-5(c). In so arguing, defendant presumably refers to the holding of *Burns*, 188 Ill. App. 3d 716, that a criminal defendant's motion for automatic substitution of judge under section 114-5(a) is deficient absent a specific allegation that the trial court is prejudiced. However, the *Burns* court affirmed the trial court's denial of an improper motion to substitute judge. *Id.* at 720. The instant case, on the other hand, challenges the trial court's *granting* of the State's improper motion rather than the *denial* of an improper motion. Defendant has cited no case where the State obtained relief on review after a trial court improperly granted a defendant's motion to substitute judge. Thus, by declining to reverse defendant's conviction absent a showing of actual prejudice, we do not impose a different standard on defendant than the State.

---

[1]We note that this case involved the State's motion to substitute judge pursuant to section 114-5(c), whereas *Burns* involved the defendant's motion to substitute pursuant to section 114-5(a). However, as the requirements of the two subsections are virtually identical, we see no reason to treat the requirement of section 114-5(a) that the defendant allege prejudice differently from the requirement of section 114-5(c) that the State allege prejudice.

¶ 42                                    II. Competency of K.R.L.

¶ 43         Defendant next argues that the trial court erred in finding K.R.L. competent to testify. Because K.R.L.'s testimony did not establish that he was disqualified to be a witness under section 115-14(b) of the Code (725 ILCS 5/115-14(b) (West 2012)), we find that the trial court did not abuse its discretion in denying defense counsel's objection to K.R.L.'s testimony on the basis that K.R.L. was incompetent.

¶ 44         The determination of the competency of witnesses in criminal trials is governed by section 115-14 of the Code (725 ILCS 5/115-14 (West 2012)):

        "(a) Every person, irrespective of age, is qualified to be a witness and no

        person is disqualified to testify to any matter, except as provided in subsection (b).

            (b) A person is disqualified to be a witness if he or she is:

            (1) Incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him or her; or

            (2) Incapable of understanding the duty of a witness to tell the truth.

            (c) A party may move the court prior to a witness' testimony being received in evidence, requesting that the court make a determination if a witness is competent to testify. The hearing shall be conducted outside the presence of the jury and the burden of proof shall be on the moving party."

¶ 45         All witnesses are presumed competent to testify. *People v. Nowicki*, 385 Ill. App. 3d 53, 86 (2008); see Ill. R. Evid. 601 (eff. Jan. 1, 2011). However, a witness may be found incompetent to testify if the moving party can demonstrate that "he or she is *incapable* of either expressing himself or herself so as to be understood [citation] or of understanding the duty of a witness to tell the truth." (Emphasis in original.) *People v. Hoke*, 213 Ill. App. 3d 263, 272 (1991). See also *People v. Mason*, 219 Ill. App. 3d 76, 80-81 (1991). "Section 115-14 suggests that intellectual rather than moral fitness is the true measure of witness competency" since that section disqualifies a witness who is incapable of understanding the duty to tell the truth but not a witness who is unlikely to tell the truth. *Id.* at 81. The question of whether a witness is unlikely to tell the truth is a credibility determination for the trier of fact. *Id.*

¶ 46         The burden of proof on the question of a witness's competency is on the challenging party by requesting the court to make a determination that the witness is competent to testify. *Hoke*, 213 Ill. App. 3d at 272 (citing Ill. Rev. Stat. 1989, ch. 38, ¶ 115-14(c)). "A trial court may determine a witness' competency to testify by observing the witness' demeanor and ability to testify during trial." *People v. Dempsey*, 242 Ill. App. 3d 568, 585 (1993). We will not reverse the trial court's finding that a witness is competent to testify absent an abuse of discretion. *People v. Jones*, 123 Ill. 2d 387, 405-06 (1988).

¶ 47         We find that the trial court did not abuse its discretion in denying defendant's trial objection to K.R.L.'s testimony on the basis that K.R.L. was incompetent. K.R.L. demonstrated that he knew the difference between the truth and a lie when he said that it would be a lie to say that the book the judge held up was blue because it was actually yellow. K.R.L. promised to tell the truth. K.R.L. was able to state his age, the names of his sisters, and that he lived with his mother and sisters. K.R.L. testified that he remembered going on a helicopter ride because his stomach was hurt. Although K.R.L. did not respond to all of the questions

posed to him by counsel and some of his answers were nonverbal, K.R.L. was able to make himself understood when he responded to the questions of counsel and the court.

¶ 48 Defendant argues that the trial court conducted an insufficient preliminary examination into K.R.L.'s competency because the court did not establish prior to K.R.L.'s testimony that K.R.L. could: (1) recollect correct impressions from his senses; (2) understand questions and express answers; and (3) appreciate the moral duty to tell the truth. See *People v. Seel*, 68 Ill. App. 3d 996, 1004 (1979). However, no competency hearing prior to K.R.L.'s testimony was required because defendant did not move for such a hearing pursuant to section 115-14(c) of the Code (725 ILCS 5/115-14(c) (West 2012)).[2] Thus, the relevant inquiry is whether, in light of K.R.L.'s trial testimony, the trial court erred in denying defendant's objection to K.R.L.'s testimony on the basis that K.R.L. was incompetent to testify. For the reasons stated above, we find that the trial court did not abuse its discretion.

¶ 49 In coming to this conclusion, we reject defendant's argument that K.R.L.'s trial testimony demonstrated that he was incompetent when, following a recess taken during K.R.L.'s direct examination, K.R.L. testified that people came up to him during the break and told him what to say and promised him a lot of ice cream. Stated another way, defendant argues that adults were instructing K.R.L. as to his testimony and essentially testifying through K.R.L. However, the fact that K.R.L. was promised ice cream and was allegedly told what to say does not render him incompetent to testify. These matters do not render K.R.L. incapable of making himself understood or understanding the duty to tell the truth. Rather, these considerations go to the weight and credibility to be afforded to K.R.L.'s testimony. *People v. Turcios*, 228 Ill. App. 3d 583, 599 (1992) (A witness's interest, bias, or motive to testify falsely is a matter affecting credibility.).

¶ 50 III. Failure to Tender Cautioning Jury Instruction
Pursuant to Section 115-10 of the Code

¶ 51 Lastly, defendant argues that the trial court committed reversible error by failing to tender a cautioning instruction to the jury after admitting hearsay statements into evidence pursuant to section 115-10 of the Code (725 ILCS 5/115-10 (West 2012)). While the parties agree that the trial court erred in not giving the jury instruction required by section 115-10, we find that said error did not constitute plain error.

¶ 52 Under section 115-10, in prosecutions for certain offenses committed against a child under the age of 13, including aggravated battery, out-of-court statements of the child victim

---

[2]We note that both defendant and the State cite to cases decided prior to the enactment of section 115-14 of the Code (725 ILCS 5/115-14 (West 2012)), which became effective January 1, 1989. Said cases require that the trial court conduct a preliminary inquiry into the competency of minor witnesses under 14 years of age. See, *e.g.*, *People v. Sims*, 113 Ill. App. 2d 58, 61 (1969); *People v. Westley*, 5 Ill. App. 3d 668, 671 (1972); *Seel*, 68 Ill. App. 3d at 1004. See also *People v. Born*, 156 Ill. App. 3d 584, 587 (1987); *People v. Davis*, 10 Ill. 2d 430 (1957). However, we have held that the enactment of section 115-14 abolished the presumption that competency hearings are required for witnesses under 14 years of age. *People v. Westpfahl*, 295 Ill. App. 3d 327, 330-31 (1998). See also *People v. Trail*, 197 Ill. App. 3d 742, 748 (1990) ("We interpret [section 115-14] as a legislative determination to discard the body of law that had developed regarding witness competency, particularly the more rigid of those former rules, such as always requiring competency hearings for prospective witnesses under 14 years of age.").

complaining of the act are admissible as an exception to the hearsay rule under certain circumstances. If an out-of-court statement is admitted pursuant to section 115-10, that section also provides for a cautioning jury instruction:

> "If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child \*\*\*, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor." 725 ILCS 5/115-10(c) (West 2012).

¶ 53    Defendant concedes that he forfeited the issue by failing to request the instruction at trial or raise the issue in a posttrial motion. See Ill. S. Ct. R. 366(b)(2)(i), (iii) (eff. Feb. 1, 1994). However, defendant asks that we review the trial court's failure to tender the instruction for plain error pursuant to Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013).[3]

¶ 54    Forfeited errors are reviewable under the plain error doctrine where: (1) "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error"; or (2) "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Belknap*, 2014 IL 117094, ¶ 48.

¶ 55    The parties do not dispute that a clear error occurred in this case. The parties agree that the jury instruction required by section 115-10 of the Code should have been given by the trial court because K.R.L.'s out-of-court statements concerning the incident were admitted pursuant to that section. Additionally, defendant does not argue that the evidence was closely balanced such as to warrant review under the first prong of plain error analysis. Thus, we consider only whether plain error review is warranted under the second prong.

¶ 56    We find that review is not warranted under the second prong of plain error analysis. Our supreme court has equated the second prong of plain error review with structural error. *People v. Thompson*, 238 Ill. 2d 598, 613-14 (2010). A structural error is " 'a systemic error which serves to "erode the integrity of the judicial process and undermine the fairness of the defendant's trial." ' " *Id.* at 614 (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009), quoting *People v. Herron*, 215 Ill. 2d 167, 186 (2005)). The supreme court has recognized structural error only in a very limited class of cases, including "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction." *Id.* at 609 (citing *Washington v. Recuenco*, 548 U.S. 212, 218 n.2 (2006)). The failure to give the cautioning instruction required by section 115-10(c) does not rise to the level of structural error.

---

[3]Rule 451(c) provides that "substantial defects" in the tendering, settling, and giving of jury instructions are not waived by failure to make a timely objection if the interests of justice require. Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013). "The purpose of Rule 451(c) is to permit correction of grave errors and errors in cases so factually close that fundamental fairness requires that the jury be properly instructed." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). The rule is coextensive with the plain error clause of Illinois Supreme Court Rule 615(a), and the two rules are construed identically. *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007).

¶ 57    Additionally, we note our supreme court's holding in *Sargent*, 239 Ill. 2d at 190-91, that failure to tender a jury instruction pursuant to section 115-10(c) did not constitute plain error under the second prong. *Id.* In the instant case, as in *Sargent*, the trial court did give a jury instruction fashioned after Illinois Pattern Jury Instructions, Criminal, No. 1.02 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 1.02).[4] While the language of the instruction fashioned after IPI Criminal 4th No. 1.02 differed from the language of the instruction required by section 115-10, the instructions "convey similar principles regarding the jury's role in assessing witness credibility and the various criteria jurors may consider when making that assessment." *Sargent*, 239 Ill. 2d at 192. We additionally note, as did the court in *Sargent*, that other safeguards were in place concerning the section 115-10 hearsay statements, including a hearing prior to trial to determine the admissibility of the statements. *Id.* at 193.

¶ 58                                          CONCLUSION

¶ 59    The judgment of the circuit court of Rock Island County is affirmed.

¶ 60    Affirmed.

¶ 61    JUSTICE HOLDRIDGE, specially concurring.

¶ 62    I concur in the judgment of the court affirming the order of the circuit court of Rock Island. I write separately to state my disagreement with the majority's rationale for affirming the order granting the State's motion for substitution. Where the majority finds harmless error in the trial court's ruling granting the State's motion to substitute judges, I find no error. I would, therefore, affirm the court's ruling on the basis that no error occurred.

¶ 63    At issue is whether the State's motion for substitution filed "pursuant to 725 ILCS 5/114-5" which stated "as its reason that the State is entitled to one substitution of Judge (without cause) as a matter of right" was sufficiently pled so as to invoke the State's right to substitution under section 114-5(c) of the Code. 725 ILCS 5/114-5(c) (West 2012). The majority rejects the State's argument that any motion under section 114-5(c) " 'essentially presume[s]' " prejudice. *Supra* ¶ 37. The majority then holds that any motion which does not contain the talismanic word "prejudice" and specific allegations of the judge's prejudice is deficient as a matter of law. I would find that the decisional law on section 114-5(c) does not support the majority's position.

¶ 64    The majority cites *People v. Burns*, 188 Ill. App. 3d 716 (1989), a decision involving section 114-5(a) of the Code, as instructive.[5] *Supra* ¶ 38; 725 ILCS 5/114-5(a) (West 2012). In

---

[4]The language of the instruction based on IPI Criminal 4th No. 1.02 is contained in paragraph 29 (*supra* ¶ 29) and is identical to the language of the IPI Criminal 4th No. 1.02 instruction given in *Sargent*. See *Sargent*, 239 Ill. 2d at 192.

[5]The majority acknowledges that the instant matter involved the State's motion to substitute judge pursuant to section 114-5(c), while *Burns* involved the defendant's motion to substitute pursuant to section 114-5(a). Finding the provisions to be virtually identical, the majority treats the concept of prejudice the same in both cases. There are cases, however, which interpret section 114-5(c) and I would limit the analysis to those cases. See *People ex rel. Baricevic v. Wharton*, 136 Ill. 2d 423 (1990); *People v. Nolan*, 332 Ill. App. 3d 215 (2002); *People v. Ross*, 244 Ill. App. 3d 868 (1993). It should be noted, however, that both statutory provisions providing for the substitution of a judge are to be

- 12 -

*Burns*, the defendant's motion did not specifically state that the trial judge was prejudiced against the defendant. When the defendant attempted to amend the motion to include an allegation of prejudice, the trial court denied the motion. The appellate court affirmed, holding that a motion for automatic substitution which failed to specify the manner in which the judge was prejudiced was fatally flawed. *Burns*, 188 Ill. App. 3d at 721. I find the majority's reliance upon *Burns* and the *Burns* analysis itself to be fatally flawed. The majority appears to hold that in order for a motion seeking an automatic substitution under section 114-5 to be granted it must contain the word "prejudice" and include details supporting the allegation of prejudice. This holding is clearly at odds with the automatic nature of the substitution permitted under section 114-5 of the Code. *People v. Nolan*, 332 Ill. App. 3d 215, 227 (2002).

¶ 65     In the instant matter, the State filed a motion for substitution of judge "pursuant to 725 ILCS 5/114-5" stating as the basis for the substitution that "the State is entitled to one substitution of Judge (without cause) as a matter of right." I would find that this motion, liberally construed, sufficiently articulated the State's concern that the trial judge was prejudiced. My rationale is twofold.

¶ 66     First, the only basis upon which the State can bring a motion for substitution pursuant to section 114-5 of the Code is "that such judge is prejudiced against the State." 725 ILCS 5/114-5(c) (West 2012). Simply put, informing the court that the motion for substitution is brought "pursuant to 725 ILCS 5/114-5" sufficiently "alleges that the trial judge is prejudiced against the State" since there can be no other basis upon which the motion could be brought. Thus, requiring the State to cite section 114-5 of the Code *and* recite that the judge is prejudiced against the State does nothing but elevate form over substance.

¶ 67     Second, and perhaps more importantly, it is well settled that the language of section 114-5(c) clearly prohibits trial courts from inquiring into the State's basis for filing a motion for substitution of judge. *People v. Ross*, 244 Ill. App. 3d 868, 878 (1993). It is equally clear that, once the State raises a claim that the trial judge is prejudiced against the State, venue must automatically be changed unless the defendant can establish a *prima facie* case that the motion is being made only to "thwart the chief judge of the circuit court's independence in assigning cases to the judges in his circuit." *Wharton*, 136 Ill. 2d at 438-39. Our courts have consistently interpreted this requirement to prevent the filing of section 114-5(c) motions on a "blanket basis [involving] every case assigned to [the judge]." *Nolan*, 332 Ill. App. 3d at 226; *Ross*, 244 Ill. App. 3d at 878. Since the State is never required to support its allegation of prejudice with specificity, requiring the State to articulate facts in support of its prejudice allegation, once again, only elevates form over substance.

¶ 68     I would hold that the "minimal requirements for automatic substitution" are met when the State files a motion that clearly advises the trial court that the motion is brought pursuant to section 114-5 of the Code. Since nothing more is necessary to apprise the court of the State's request, nothing more should be required. I disagree with the majority's demand that the motion contain superfluous verbiage.

¶ 69     In all other regards, I concur in the judgment of the court.

---

construed liberally to promote rather that defeat substitution. *Nolan*, 332 Ill. App. 3d at 224 (citing *People v. McDuffee*, 187 Ill. 2d 481, 488 (1999)).